THE GAMBLE-ROBINSON COMMISSION COMPANY, Defendant in Error, *vs.* THE UNION PACIFIC RAILROAD COMPANY, Plaintiff in, Error.

*Opinion filed February 21, 1914—Rehearing denied April 8, 1914.*

1. CARRIERS—*status of initial carrier under Carmack amendment to Inter-State Commerce act.* Under the Carmack amendment to the Inter-State Commerce act, which supersedes all regulations and policies of the different States, a common carrier which receives property for transportation from a point in one State to a point in another State is liable to the holder of the bill of lading for loss or injury to such property caused by it or by any carrier to which such property may be delivered or over whose line or lines it may pass.

2. SAME—*when initial carrier is conclusively treated as having made a through contract.* Under the Carmack amendment to the Inter-State Commerce act a common carrier which accepts goods for shipment to a point on another line in another State is conclusively treated as having made a through contract, the same as though the point of destination were on its own line, and as electing to treat the connecting carrier as its agent.

3. SAME—*liability under Carmack amendment does not depend upon issuing bill of lading.* It is the receiving of the goods for transportation to a point in another State which makes the carrier liable, under the Carmack amendment, for damage or loss caused by itself or by a connecting carrier, and such liability does not depend upon its issuing a receipt or bill of lading for the goods.

4. SAME—*when initial carrier is liable though cars are diverted to new destinations.* Where a railroad company accepts cars of perishable freight for shipment to a point on its own line in another State and issues bills of lading therefor, but thereafter agrees with the holder of the bills of lading that the cars shall be diverted from the original destination on its own line to different points of destination on other lines at the through rate from the point of shipment to the new destinations, it is liable, under the Carmack amendment, to the same extent as though the cars had originally been received for shipment to the new points of destination, even though new bills of lading were not issued for the diverted cars.

5. EVIDENCE—*carrier should specifically point out portions of inspectors' reports it considers inadmissible.* In an action against a carrier for damages to a shipment of fruit, claimed to be due to failure of the defendant to ice the cars, if the defendant considers

certain expressions contained in inspectors' reports, introduced by the plaintiff for the purpose of showing the condition of the fruit, to be incompetent because they refer to damage done by rough handling of the cars, it should specifically point out the expressions objected to, and it is not sufficient to object generally to the admission of the reports in evidence.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding.

JOHN A. SHEEAN, for plaintiff in error.

CHARLES A. BUTLER, (FRANKLIN RABER, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Defendant in error, the Gamble-Robinson Commission Company, (hereafter called plaintiff,) sued in the municipal court of Chicago plaintiff in error, the Union Pacific Railroad Company, (hereafter called defendant,) to recover damages claimed to have been sustained to fruit shipped in twenty cars from Ogden, Utah, to different points in Minnesota, South Dakota and Iowa, one car shipped from Ogden to Omaha and one from Riverdale, Utah, to Minneapolis. The suit was brought against defendant as initial carrier of an inter-State shipment, under what is known as the "Carmack Amendment to the Inter-State Commerce Act." Plaintiff recovered a judgment in the trial court for $4500. Upon appeal the judgment was affirmed by the Appellate Court for the First District, and the record is brought to this court for review by writ of *certiorari.*

The fruit was loaded at the origin of the shipment by the Salt Lake Valley Packing Company and consigned to plaintiff. The destination of each car at the time of the shipment was Omaha, Nebraska. Bills of lading were is-

sued by defendant, signed by its agent and by the shipper. They contained directions and requirements to be performed by defendant as to icing each car. Plaintiff claimed, and offered proof to support the claim, that at or before the arrival of the cars at Omaha, twenty-one cars were by oral agreement between plaintiff, whose office was in Minneapolis, Minnesota, and defendant, through its agent at Minneapolis, diverted to points in Minnesota, South Dakota and Iowa, through rates to apply. The fruit arrived in a damaged condition at the ultimate points of destination to which the cars were diverted, and the proof offered by plaintiff was as to the damaged condition of the fruit at its final destination. The shipment from Omaha was over lines not belonging to defendant. David F. Gamble, vice-president of plaintiff, testified that he made the agreement for the diversion of each one of the cars, describing them by initials, numbers, etc., with D. M. Collins, defendant's agent at Minneapolis, and that in each instance he delivered to said Collins the original bill of lading which he had received through the mail for each car about the third day after it was billed at Ogden. He gave defendant's agent the routing for each car from Omaha to its final destination. Collins and his clerk denied any agreement was made with them for diversion of any of the cars except four.

Plaintiff's proof tended to show that the cars were unreasonably delayed in reaching their destination, and also that they had not been properly iced at the point of shipment and during transit. Upon the latter question the testimony was conflicting as to some, at least, of the cars. Plaintiff's proof was that icing the cars at the starting point of the shipment was not omitted with the knowledge and by the consent of the shipper. As the proof on the part of the plaintiff abundantly tended to support its claim that defendant agreed to the diversion of the cars at Omaha to their final destination, through freight rates to apply, and

that the failure to properly ice the cars was the fault of defendant, the judgment of the Appellate Court is conclusive of both those questions.

No new bills of lading appear to have been issued when the diversion was agreed to between the parties, but the cars were continued over lines not belonging to defendant, to their ultimate destination, by direction of defendant. If the shipment had originally been made from Ogden to the places to which the cars were diverted on their arrival at Omaha, the action for damages would lie, under the Carmack amendment, notwithstanding the defendant's line did not extend beyond Omaha. That amendment to the Inter-State Commerce act provides: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it, or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass." The amendment further provides that no contract, receipt, rule or regulation shall exempt such common carrier from the liability imposed by the act. The common carrier issuing the bill of lading or receipt is given a right of action to recover from the railroad company on whose line the loss or damage shall have been sustained, the amount of such loss or damage it may be required to pay the owner of the property. That this act superseded all regulations and policies of the different States was held in *Adams Express Co: v. Croninger,* 226 U. S. 491. In that case the court said: "That the legislation supersedes all the regulation and policies of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or con-

tract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all State regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the State upon the subject of such contracts, but when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceased to exist." In *Galveston, Harrisburg and San Antonio Railway Co.* v. *Wallace,* 223 U. S. 481, it was held that under the Carmack amendment whenever a carrier accepts goods for shipment to a point on another line in another State it is conclusively treated as having made a through contract; that it thereby elects to treat the connecting carrier as its agent and must be treated as though the point of destination was on its own line.

Under the above authorities there could be no question that if defendant had accepted and billed the fruit for shipment to its final destination it would have been liable for damages resulting from the negligence of any connecting carrier over whose line the fruit was shipped. Assuming, as we must under the proof, that defendant agreed to the diversion at Omaha and caused the shipment to be made from that point over the lines of other common carriers, is its liability to be limited to damages occurring on its own line? We are unable to distinguish between the liability of the defendant under the facts in this case from the liability that would have existed if the original contract of shipment had been from Ogden to the places of final destination. The only thing lacking, then, to bring the case squarely within the letter of the Carmack amendment is that defendant did not execute a written bill of lading or contract for the through shipment. The amendment to the Inter-State Commerce act referred to, makes it the duty of a railroad company receiving property for transportation from a point in one State to a point in another State to

issue a receipt or bill of lading therefor.  But the liability imposed by the act is not dependent upon the issue of such receipt or bill of lading.  The liability is created by the railroad company receiving and agreeing to the shipment of the property.  The receipt or bill of lading is evidence of the contract but its issuance is not necessary to create the liability.  It is expressly provided that no contract, receipt, rule or regulation shall exempt the railroad company from the liability imposed.  It seems obvious that the railroad company cannot be permitted to relieve itself of liability by failing to perform its duty in the issuance of the bill of lading.  The re-shipping of the cars upon or immediately before their arrival at Omaha to the ultimate points of destination, and at the through freight rates from Ogden to such points, was a modification of the original contract of carriage as evidenced by the original bills of lading.

Under the decisions of the United States Supreme Court it seems clear defendant's liability did not cease until delivery of the property at its final destination.  If the defendant had not undertaken and agreed to continue the shipment from Omaha to the final destination its liability would have ceased when the property arrived at Omaha, and this is substantially what was held in *Parker-Bell Lumber Co.* v. *Great Northern Railway Co.* 124 Pac. Rep. 389.  In that case there was a shipment of shingles over the Great Northern railroad from Sisco, Washington, to Kankakee, Illinois.  A bill of lading was issued in which the railroad company agreed to safely carry and deliver the shingles to Kankakee, Illinois.  It made no further agreement or undertaking to deliver them anywhere else.  Upon arrival of the shingles at Kankakee over the Chicago, Indiana and Southern railroad, which was the final connecting road over which the shipment was made, at the request of the owner of the shingles the last named railroad diverted them to Palisades Park, New Jersey, issued a new bill of lading and forwarded the shingles over a new line

of connecting carriers. It was held the liability of the initial carrier ceased with the delivery of the shingles at Kankakee. We do not understand that decision to be in conflict with the views we have expressed. In that case the initial carrier never, orally or by bill of lading, agreed to carry the shingles to any destination other than Kankakee. The contract to divert the shipment from Kankakee to Palisades Park appears to have been made by the owner of the property with the last connecting carrier in the shipment from Sisco to Kankakee. Clearly, that railroad company could not extend the liability of the initial carrier for a shipment beyond the destination to which the initial carrier accepted the shingles and agreed to safely carry the same.

Apparently for the first time objection was made in the Appellate Court to the sufficiency of plaintiff's statement of claim in the municipal court. We do not think the objection meritorious, and what we have previously said renders unnecessary a discussion of the objection.

It is insisted the trial court erred in the admission of testimony on behalf of plaintiff. Plaintiff called as witnesses several parties who had examined the fruit upon its arrival at the places of destination. They had made a record of the result of their inspections on blanks called inspectors' reports. These reports were admitted in evidence. Some of them contained expressions that the damaged condition of the fruit was due to rough handling by the carriers, and it is these expressions the defendant insists were incompetent. It is not contended that the admission of these inspectors' reports was erroneous, but the complaint is confined to the expressions in said reports referred to. When the reports were offered in evidence they were objected to, but no such objection as is now insisted upon was made at that time. If it had been desired to save the question now raised, it should have been done by pointing

out the particular parts of the reports claimed to be incompetent. At all events, we are of opinion defendant was not prejudiced by the evidence objected to.

Finding no reversible error in the record the judgment of the Appellate Court is affirmed.     *Judgment affirmed.*