## J. C. Shaffer & Company, Appellee, v. The Chicago, Rock Island and Pacific Railway Company, Appellant.

## Gen. No. 19,358.

CARRIERS, § 168*—*when limitation of liability in bill of lading governs as to measure of damages in interstate shipments.* Limitation in a bill of lading limiting the value of goods shipped in case of loss or damage to the value thereof at the place and time of shipment, *held* controlling as to the measure of damages for the negligence of a carrier in an interstate shipment coming within the provisions of section 20 of the Interstate Commerce Act as amended by the Carmack Amendment in 1906, where the shipper chooses to take the reduced rate provided in the uniform bill of lading.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

Appeal from the Circuit Court of Cook county; the Hon. PAUL McWILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed. Opinion filed March 31, 1914.

M. L. BELL and A. B. ENOCH, for appellant.

CHESTER ARTHUR LEGG, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

This case was heard in the Circuit Court upon a stipulation of facts as follows:

"On December 24, 1909, plaintiff purchased from John I. Glover, of Kansas City, Mo., 5,000 bushels of wheat at 99.5 cents per bushel delivered Chicago. December 27, 1909, Glover delivered to the defendant at Kansas City, Mo., said 5,000 bushels of wheat in various cars, including car C. R. I. & P. No. 34217, containing 1433 bushels and 20 pounds. This car was shipped by said Glover to 'shipper's order, notify J. C. Shaffer & Company, Chicago, Illinois,' but owing to the negligence of the defendant the car was diverted and misdelivered, and plaintiff, the owners of the wheat in said car and the holders of the bill of lading, endorsed, never received the same. When the wheat in said car was delivered to the defendant at Kansas City, the latter issued a bill of lading acknowledging receipt of the wheat, and undertook to transport the same to Chicago and there deliver to the shipper's order. Among the conditions printed on the bill of lading was the following:

'The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper, or has been agreed upon, or is determined by the classifications or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount

to govern such computation, whether or not such loss or damage occurs from negligence.'

The attention of plaintiff was not called to conditions on the bill of lading, nor was the attention of the shipper called to same. In the tariffs of defendant, which were filed with the Interstate Commerce Commission and posted as required by law, the following was contained:

'4.  A. Unless otherwise provided, when property is transported subject to the provisions of the Western Classification, the acceptance and use are required, respectively, of the "Uniform bill of Lading", "straight" or "order", as shown on pages 10 and 12.

B. Paragraph B. gave an option to the consignor of shipping his property either subject to the terms and conditions of the Uniform Bill of lading, or under the liability imposed upon common carriers by the common law or Federal and State statutes applicable thereto.  It stated that this Western Classification provided for different rates and for different forms of bills of lading, to be used as the consignor may elect to have a limited liability or a common carrier's liability service.

C. Paragraph C. stated that property would be carried, unless otherwise provided in this classification, at the reduced rate specified if shipped subject to all the terms and conditions of the Uniform Bill of Lading.  It further stated that if the consignor did not wish to ship subject to the terms of the said uniform bill of lading, he should notify the agent at the time of shipment, and that if he did not give such notice it would be understood that he desired the property carried subject to the terms and conditions of the Uniform Bill of Lading, in order to secure the reduced rate.

D. This paragraph stated that property not carried subject to the terms of the Uniform Bill of Lading would be carried on basis of carrier's liability limited as provided by common law and by the laws of the United States and of the several states, in so far as they apply, but subject to the terms of the uniform bill of lading, in so far as said terms are not inconsistent with said carrier's liability.  This paragraph fur-

ther provided that the rate charged for property not shipped under the said terms of the Uniform Bill of Lading would be 10 per cent. higher than the rate charged for the property shipped subject to said terms of the Uniform Bill of Lading.

E. This paragraph provided that when the consignor gave notice to the agent of the forwarding carrier that he did not elect to accept the Uniform Bill of Lading, but desired carrier's liability service at the higher rate, the carrier must stamp upon the bill of lading a clause signed by the agent, reading: "In consideration of the higher rate charged the property herein described will be carried at the carrier's liability, limited only as provided by law, but subject to the terms and conditions of the Uniform bill of Lading in so far as they are not inconsistent with such common carrier's litbility." '

The bill of lading in this case was a Uniform Bill of Lading straight, and was published in full, including the above mentioned conditions on the back thereof, in the tariffs of the defendant. At the point of shipment the consignor did not give notice to the agent of defendant that he elected not to accept all the terms of the Uniform Bill of Lading, and consequently the shipment was shipped at the reduced rate provided in the tariffs for shipments moving on said Uniform Bill of Lading.

The shipper paid the freight on this car of wheat, based on a rate of 12 cents per 100 pounds. This rate of 12 cents was the proportional Missouri river rate on grain to Chicago, effective July 1, 1907. The Uniform Bill of Lading, with the provision set out in full above, substituting the invoice price of shipment as the measure of damages in case of loss or damage, in place of the value at destination, the measure of damages at common law, went into effect December 1, 1908. The rate of 12 cents above mentioned has not been changed since July 1, 1907, (defendant makes the admission in this paragraph subject to its objections for materiality and relevancy).

When the car failed to arrive in Chicago, plaintiff notified defendant that it was compelled to purchase another car in place of same in order to fill outstand-

ing contracts which it had made for the delivery of the car in question. The market having risen, the plaintiff was compelled to pay $1.03½ per bushel and present claim for the loss occasioned thereby, being the difference between 99½ cents per bushel and $1.03½ per bushel, in addition to the invoice price remitted to said shippers.

The defendant concedes its liability for $1,322.96, being the invoice value of the wheat at Kansas City, to-wit: 99½ cents per bushel, less the freight charges, 12 cents per 100 pounds. This sum plaintiff refused to acept.

Additional stipulation of facts. After the original stipulation of facts hereinbefore mentioned was signed, defendant paid to the plaintiff $1,322.96, which was the amount for which the defendant conceded its liability under the original stipulation of facts, and the plaintiff accepted this sum under an agreement between the parties that the payment would be without prejudice to its rights to recover from defendant the damages claimed in the declaration and in the original stipulation of facts.''

Judgment was entered in favor of the plaintiff for $57.33. The only question presented for review is whether the measure of damages as fixed by the bill of lading shall control, or the measure of damages as fixed by the common law. If the bill of lading controls, then the loss or damage for which the defendant is liable is to be computed on the basis of the value of the wheat (being the bona fide invoice, if any, to the consignee, including the freight charges if prepaid) at the place and time of shipment. If the latter view is to control, then the measure of damages is the value of the wheat at Chicago less freight charges.

The case comes within the provision of section 20 of the Interstate Commerce Act as amended by the Carmack Amendment in 1906. We have had occasion to consider the effect of this amendment. *Gamble-Robinson Commission Co. v. Union Pac. R. Co.*, 180 Ill. App. 256. The case referred to has been reviewed by the Supreme Court and affirmed in 262 Ill. 400. We said

620     APPELLATE COURTS OF ILLINOIS.

J. C. Shaffer & Co. v. The C., R. I. & P. Ry. Co., 185 Ill. App. 615.

in that case that the law respecting the duties and responsibilities of common carriers of interstate shipments is now to be found wholly in the acts of Congress as construed by the United States Supreme Court; that as declared by that court, Congress has so manifested a purpose in the Carmack amendment to take possession of the subject of the liability of a railway carrier for loss or damage to an interstate shipment as to supersede all State regulation upon the same subject, including the provisions of State constitutions or laws invalidating contracts limiting the carrier's liability. *Adams Express Co. v. Croninger*, 226 U. S. 491; *Chicago, St. P. M. & O. R. Co. v. Latta*, 226 U. S. 519; *Chicago, B. & Q. R. Co. v. Miller*, 226 U. S. 513; *Missouri, K. & T. Ry. Co. v. Harriman*, 227 U. S. 657. The rule laid down in the case last cited we think is applicable to the case now before us. It is there said:

"The liability imposed by the statute (referring to the Interstate Commerce Acts and particularly to the Carmack amendment) is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence."

Prior to the rendition of the decision last referred to the Court had said in the *Croninger* case, *supra*:

"It has therefore become an established rule of the common law, as declared by this court in many cases that such a carrier may by a fair, open, just and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage, to an agreed value made for the purpose of obtaining the lower of the two or more rates of charges, proportioned to the amount of risk."

In the brief of plaintiff it is said: "It has further been demonstrated that the stipulation in the Uniform Bill of Lading limiting the measure of recovery from a carrier to the invoice price at the time and place of shipment even for loss due to its negligence is not an effort to agree upon a bona fide valuation of the com-

modity shipped, but, is both in fact and on principle, an attempt to impose upon the shipper an arbitrary and unreasonable amount as a measure of his recovery from the carrier even for the latter's negligence." This was the contention also of the plaintiffs when the matter now before us was before the Interstate Commerce Commission. *J. C. Shaffer & Co. v. Chicago, R. I. & Pac. Ry. Co.,* 21 Interstate Commerce Commission Reports 8. (Prior to this decision the uniform bill of lading had been approved by the Interstate Commerce Commission.) In dismissing the complaint the commission said: "After a careful consideration of this subject, which is in effect a reconsideration on our part of this section of the uniform bill of lading, we are not convinced that the provision assailed in this proceeding has been shown to have operated in an unreasonable or unlawful manner in connection with complainant's shipment." The tariffs were published and filed as required by law, and the Uniform Bill of Lading was printed upon them. This publication and filing made the tariffs binding upon the shipper as well as the carrier. The case of *Plaff v. Pacific Exp. Co.,* 251 Ill. 243, referred to by plaintiff, was decided before the determinative decisions of the United States Supreme Court heretofore referred to were made, and in our opinion, as heretofore expressed, is no longer authoritative. *Gamble-Robinson Commission Co. v. Union Pac. R. Co., supra.* It is admitted that by paying an additional amount the plaintiff might have held the defendant to its common-law liability; that is to say, for the full value of the wheat at Chicago less the transportation charges. It chose, however, to take the reduced rate, and the case of *Adams Exp. Co. v. Croninger, supra,* is controlling.

The judgment of the Circuit Court is reversed.

*Reversed.*