# William M. Sweetser, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. COMMERCE, § 5*—*what law governs duties and responsibilities of interstate carriers.* Since the enactment of the Carmack amendment to the Interstate Commerce Act the law respecting the duties and responsibilities of common carriers of interstate shipments is to be found wholly in the acts of Congress as construed by the Supreme Court of the United States.

2. COMMERCE, § 5*—*what is effect of Carmack amendment upon state regulations on liability for interstate shipments.* In enacting the Carmack amendment to the Interstate Commerce Act, Congress manifested a purpose to take possession of the subject of the liability of a railway carrier for loss or damage to an interstate shipment, and all State regulations on the subject, including provisions of State constitutions or laws invalidating contracts limiting the carrier's liability, are thereby superseded.

3. CARRIERS, § 241*—*when provision of bill of lading requiring certain notice as prerequisite to recovery sufficient in form.* In an action to recover for alleged negligent damage to a race horse while being transported in interstate commerce, language in the shipping contract providing that recovery for injuries to the property in transit will be barred unless the notice of the injury be given to the carrier within five days after the shipment, *held* plain and certain in meaning.

4. CARRIERS, § 241*—*what is object of provision in bill of lading requiring notice of injury to shipment as prerequisite to recovery.* Where a contract for the shipment of live stock contains a provision barring recovery for injury to the live stock transported unless notice of the injury is given to the shipper within a named time, the manifest object of such a provision is to force those claiming to have been damaged by the negligence of the carrier to present their claims promptly for adjustment, while the facts and circumstances on which the claims are based are fresh in the memories of parties and witnesses, and to prevent dishonest claimants from harassing or imposing upon the carrier.

5. CARRIERS, § 241*—*when provision in bill of lading limiting time for presentation of claim valid.* A provision in a shipping contract limiting the time within which a claim for damages for injury to live stock may be made, and fixing the manner and place of making it, is valid and binding when voluntarily and understandingly entered into.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. CONFLICT OF LAWS, § 21*—*what law governs validity of provision in contract for interstate shipment limiting time for bringing suit.* Under the Carmack amendment to the Interstate Commerce Act the validity of a provision in a contract of interstate shipment that suit must be brought within a special period is a Federal question to be settled by the general common law, and the question is withdrawn from the operation of State legislation.

7. CONTRACTS, § 120*—*when failure of shipper to read contract no defense under Federal law.* Under the Carmack amendment to the Interstate Commerce Act the fact that a shipper of live stock in interstate commerce did not read the contract of shipment at the time of signing it would not under the Federal law relieve him from the binding force of the provisions of the contract.

8. CARRIERS, § 241*—*when provision in bill of lading limiting time for notice of injury valid.* The duty required of a shipper by a shipping contract providing that recovery for injury to live stock shipped shall be barred unless notice of the injury is given to the carrier within five days is reasonable, and compliance therewith is not onerous.

9. CARRIERS, § 241*—*when failure to give notice of injury to live stock within time limited precludes recovery.* The failure of a shipper of live stock in interstate commerce to comply with a requirement of the shipping contract that notice of injury to the live stock be given to the carrier within five days is fatal to the right to recover for such injury.

10. APPEAL AND ERROR, § 1802*—*when remand on reversal unnecessary.* In an action to recover for injury to a race horse in transportation in interstate commerce, where the shipping contract requires that notice of injury be given to the carrier within a named time, the testimony of plaintiff that he failed to comply with such requirement will obviate the necessity of a remand on reversal.

Appeal from the Circuit Court of Madison county, the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the March term, 1915. Reversed. Opinion filed December 1, 1915.

C. E. POPE and H. F. DRIEMEYER, for appellant; SILAS H. STRAWN, of counsel.

J. V. E. MARSH, for appellee.

Mr. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appellee obtained a judgment against appellant in the Circuit Court of Madison county, for the sum of $375, on account of injuries to a race horse owned by him. The injuries occurred under the following circumstances:

The race horse called Peter Pan, owned by appellee and in charge of Walter Hutchins, was in a race at Bowling Green, Missouri, but becoming lame was drawn from the race and soon thereafter, on August 8, 1913, was shipped by Hutchins, with two other horses, from that point to Alton, Illinois, over appellant's road. At Godfrey, Illinois, the car containing the horses was set out of the train to be taken to Alton by a switch engine. This engine was carelessly managed in coupling onto the car, so that it struck the same with such force as to knock the horse down and severely injure him, and destroy its value as a race horse, which was shown to have been from $1,500 to $2,000 before the injury. At the time the horse was shipped, a shipping contract was prepared by appellant's agent at Bowling Green and signed in duplicate, one copy being kept by the agent and the other delivered to Hutchins, and the freight bill to Alton, amounting to $19, was paid by Hutchins to the agent. The agent at Bowling Green testified Hutchins asked him the rate and he told him it would be $19, at a valuation of $100 each for the horses. Hutchins denies this and states when he applied to the agent the latter put him off until after the passenger train should have passed; that the freight train came in immediately behind the passenger and that he then ran into the depot, called to the agent, who brought the contract to the window where he signed it and ran to his car; that it was then 7:30 P. M., the light was poor and he could hardly see where to put his name; that he made no inquiry about rates and there was nothing said as to the valuation by the agent. The agent stated the time at which the contract was signed was an hour earlier.

A number of errors are assigned by appellant, but it seeks to reverse the judgment on two principal grounds: One, that the contract and appellant's tariff schedule, duly published and on file with the Interstate Commerce Commission, each provided that at the rate of freight charged appellant's liability was limited to $100 for any injury to each horse and that therefore the judgment was in excess of appellant's liability. Second, that appellant was not liable for any amount whatever to appellee, because it was provided in section 11 of the contract that if any loss or damage of any kind should occur to the property named in the contract, the shipper should, within five days after the live stock in question had been shipped, give notice in writing of his claim therefor to the railroad company and that in the event of a failure of the shipper to give such notice, he released and should be barred from all claims of any kind or character against said railroad company, arising out of the injury or damage to said stock. Counsel for appellant in their brief contend that this being an interstate shipment, the whole subject-matter of the suit and contract governing the shipment is embraced and governed by the Federal Interstate Commerce Act as amended by the Carmack amendment passed June 29, 1906; and that while the State courts have jurisdiction to try such cases, they must be governed in the trial by said act as amended and Federal decisions construing the same. The authorities cited by appellant support the position assumed by them, and show that by said act and the Carmack amendment, Congress assumed control of the subject of liabilities such as that in question and removed it from the control of the several States. In the case of *Adams Express Co. v. Croninger*, 226 U. S. 491, it is said by the Supreme Court of the United States upon this subject: ''Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject. * * * That the legislation supersedes all the regulations and policies of a

particular State upon the same subject, results from its general character.  It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation or contract.  Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all State regulation with reference to it.  Only the silence of Congress authorized the exercise of the police power of the State upon the subject of such contracts.  But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceased to exist.  *  *  *  The duty to issue a bill of lading, and the liability thereby assumed, are covered in full; and though there is no reference to the effect upon State regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject.''  Our Appellate Court has held upon the same subject that: ''The law respecting the duties and responsibilities of common carriers of interstate shipments is now to be found wholly in the acts of Congress as construed by the United States Supreme Court; that as declared by that court, Congress has so manifested a purpose in the Carmack amendment to take possession of the subject of the liability of a railway carrier for loss or damage to an interstate shipment as to supersede all State regulation upon the same subject, including the provisions of State constitutions or laws invalidating contracts limiting the carrier's liability.''  *J. C. Shaffer & Co. v. Chicago, R. I. & P. Ry. Co.,* 185 Ill. App. 615 and *Gamble-Robinson Commission Co. v. Union Pac. R. Co.,* 180 Ill. App. 256.  The judgment of the Appellate Court in the case last named was reviewed and affirmed by the Supreme Court in 262 Ill. 400, and it was there said that the Carmack amendment to the

Interstate Commerce Act "superseded all regulations and policies of the different States."

Assuming therefore that the contract of shipment in this case must be governed by the Federal act, we must consider the effect to be given the provisions of this contract thereunder. If appellee is barred in his right of action by his failure to give five days' notice of the injury to his horse, which failure is admitted by him, as provided for by section 11 of the contract, then it would be unnecessary and useless to discuss the question whether appellant is limited in his liability by other provisions of the contract, and for that reason the effect of section 11 should be first determined. The language of this section is plain and its meaning certain, wherein it provides that notice of the injury must be given within five days after the shipment or recovery therefor will be barred. This provision in a shipping contract is not an unusual one, and the validity of similar provisions has been frequently passed upon by State and Federal courts. It is stated in *Black v. Wabash, St. L. & P. Ry. Co.*, 111 Ill. 351: "The manifest object of such a provision is to force those claiming to be damaged by the carrier's negligence, to promptly present their claims for adjustment while the facts and circumstances upon which they are based are fresh in the memories of parties and witnesses, and to prevent being harassed or imposed upon by dishonest claimants."

In *Baltimore & O. S. W. R. Co. v. Ross,* 105 Ill. App. 56, the court holds, for the reasons set forth in the case last above referred to, that such a provision is binding when voluntarily and understandingly entered into; and again in *Baltimore & O. S. W. R. Co. v. Fox,* 113 Ill. App. 180, it is held: "A provision limiting the time within which a claim may be made and fixing the manner and place of making it, is also valid and binding." In *Clegg v. St. Louis & S. F. R. Co.,* 203 Fed. 971, the Federal Circuit Court of Appeals for the

eighth circuit held a similar provision to be valid, and again in *Missouri, K. & T. Ry. Co. v. Harriman Bros.*, 227 U. S. 657, the Supreme Court of the United States holds that the Carmack amendment had withdrawn the determination of the validity of all stipulations in interstate shipping contracts from State law and legislation under that amendment; and that the validity of a provision that suit must be brought within a special period is a Federal question to be settled by the general common law.

Hutchins testified that he did not read the contract at the time he signed it but, even if he did not do so, this would not now relieve him from the binding force of its provisions under the Federal law. *Atchison, T. & S. F. Ry. Co. v. Robinson*, 233 U. S. 173; *Missouri, K. & T. Ry. Co. v. Harriman Bros., supra; Great Northern Ry. Co. v. O'Connor*, 232 U. S. 508, 8 N. C. C. A. 53. And it is to be observed that even if Hutchins did not read the contract at the time he signed it, he had ample time to do so before the expiration of the five days within which it required notice of damage to be given, and he could thereby easily have advised himself of this requirement of the contract. The duty provided for in this regard was not an onerous one, and from what is said in the foregoing authority, and as it appears from a reading of the same, it was a reasonable one and could readily have been complied with by appellee or his agent.

In *Clegg v. St. Louis & S. F. R. Co., supra,* it is said upon this question: "We are clearly of the opinion that the eleventh provision in the contract above quoted, relative to giving notice, was a valid one, and the failure to give the notice fatal to plaintiff's right to recover," and many cases are there cited in support of this doctrine. Appellee or his agent might readily have given the notice of damage to his stock required of him by the contract, and having failed to do so he is, by virtue of the established rules of law above referred to,

barred from any recovery in this suit. The judgment of the court below will be reversed, and as appellee himself testified that he did not give the required notice, and no recovery can be had in its absence, the case will not be remanded.

*Reversed.*