Fox v. Chicago & Northwestern Ry. Co., 199 Ill. App. 453.

# Peter Fox et al., trading as The Peter Fox Sons Company, Defendants in Error, v. Chicago & Northwestern Railway Company, Plaintiff in Error.

## Gen. No. 21,101.

1. CARRIERS, § 139*—*when evidence sufficient to sustain finding as to damage to fruit by negligence.* In an action for damages resulting from delay in transportation of car of cherries, evidence examined and *held* to sustain finding that damage resulted from negligence of defendant.

2. APPEAL AND ERROR, § 1077*—*when assignments of cross-errors properly before court on review.* Assignments of cross-errors are properly before the court on review though no exceptions to the rulings of the trial court are preserved.

3. CARRIERS, § 160*—*when shipper electing to ship under uniform bill of lading bound by provisions limiting liability.* Where a shipper having option of shipping under the uniform bill of lading or, by paying a higher rate, shipping under carrier's liability as imposed by common law or State or Federal law, so far as applicable, elects to ship under uniform bill of lading, he is bound by limitations of carrier's liability contained therein.

4. CARRIERS, § 143*—*what damages recoverable under bill of lading limiting liability to bona fide invoice price and freight.* Under a bill of lading providing that, "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading," the liability of the carrier, in case of total loss of shipment through its fault, is limited to the "bona fide invoice price" of the property at the time and place of shipment, plus freight charges, if prepaid; but if the property is damaged through the fault of the carrier, the amount of its liability is the amount of the damage provided the same does not exceed the "bona fide invoice price" of the property at the time and place of shipment.

5. APPEAL AND ERROR, § 1810*—*when final judgment entered on reversal without remanding.* On reversal of a judgment, where all the facts are before the court and a jury trial has been waived, judgment will be entered in the Appellate Court for the amount due without remanding.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Error to the Municipal Court of Chicago; the Hon. EDWARD T. WADE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Reversed and judgment here. Opinion filed May 12, 1916.

CHARLES A. VILAS and IRA C. BELDEN, for plaintiff in error; WILLIAM G. WHEELER, of counsel.

PINES & NEWMANN, for defendants in error; ALVIN E. STEIN, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Defendants in error (plaintiffs) recovered a judgment in the Municipal Court of Chicago against the plaintiff in error (defendant) for $105, damages occasioned by the delay in transporting a car of cherries from Sturgeon Bay, Wisconsin, to Chicago, to reverse which the defendant prosecutes this writ of error, and the plaintiffs have assigned cross-errors.

The facts are these: On Friday, July 26, 1912, about 9:30 o'clock a. m., the defendant received at Green Bay Junction, Wisconsin, from the Green Bay and Western Railroad Company a car of cherries to be delivered by the defendant to the plaintiffs in Chicago. After the defendant received the car, its first train carrying perishable freight left North Green Bay for Chicago at 1 o'clock p. m. This train was not scheduled to stop at Green Bay Junction. The defendant also operated a switching train which carried perishable freight from Green Bay Junction to North Green Bay, a distance of three miles, where it could be picked up and brought to Chicago by the regular trains carrying perishable freight. The car in question remained at Green Bay Junction from 9:30 a. m. to 5:30 or 6:00 o'clock p. m. of the same day, and was there picked up by a slow freight train and brought to Chicago. The usual time required for this

Fox v. Chicago & Northwestern Ry. Co., 199 Ill. App. 453.

train in making the trip to Chicago was about thirty-three hours, while the usual time for trains carrying perishable freight was from seventeen to nineteen hours. If the car had been brought to Chicago by the train carrying perishable freight, it would have arrived about 8:45 a. m. Saturday, but being brought on the slower train, it did not arrive until about 8 o'clock a. m. Sunday, and the cherries could not be moved until Monday. The car contained 630 cases of cherries, which the plaintiffs had sold for $1.75 per case. As they were unable to deliver them on Saturday, and could not do so until Monday, some of the cherries had become damaged and were sold at the fair market price, as follows: 255 cases, $1.75; 177 cases $1.60; 198 cases, $1.20.

There was evidence which tends to show that the damage to the cherries was caused by the delay in shipment, and that the car was not properly iced. The defendant contends that it was in no way negligent in transporting the car; that it properly iced the same; that the bill of lading under which the cherries were shipped expressly provided that the defendant was not bound to transport the car on any particular train, or in time for any particular market, or otherwise than with reasonable dispatch, unless by specific agreement, and that there was no such specific agreement. The question is not whether the defendant was required to transport the cherries by a particular train, or deliver them in time for any particular market, but whether due diligence was used to transport them with reasonable dispatch and whether the car was properly iced. We think that the evidence is sufficient to sustain the finding of the trial court that the cherries were damaged by reason of the negligence of the defendant.

The defendant contends that the court erred in its rulings on the admission of certain evidence. We have

carefully considered the objections urged and find the same without merit.

Plaintiffs have assigned cross-errors, and contend that the court did not apply the proper measure of damages. The defendant has moved in this court that the cross-errors be stricken from the record, for the reason that the plaintiffs preserved no exception to the ruling of the court complained of, which motion was reserved to the hearing. The argument is that exceptions were not properly preserved as required by section 81 of the Practice Act (J. & A. ¶ 8618). We think that the cross-errors are properly before us for consideration, and the motion of the defendant will be denied. *Miller v. Anderson,* 269 Ill. 608.

The cherries were carried subject to the terms and conditions of the uniform bill of lading. Among the conditions printed on the bill of lading is the following: "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

The plaintiffs contend that this provision of the bill of lading "limiting the amount of recovery to the value of the goods at the point of shipment is against the law, as limiting the carrier's liability for loss or damage arising from the negligence of the carrier"; that the proper measure of damages is the difference between the market value of the property at the time and in the condition it should have arrived at its destination, and its fair market value at the time it actually

did arrive at its destination, plus the necessary expenses to the shipper caused by the negligence of the carrier.

The defendant contends that the provision above quoted is valid and binding, and therefore the proper method of computing the damages, if any, is, as provided in the bill of lading, to take the invoice price of the cherries at the time of their delivery to the railroad company in Wisconsin, plus the freight charges, and from this total deduct the amount actually received for them when sold in Chicago. This was the view adopted by the trial court. The invoice price of the cherries in Wisconsin was stipulated to be $1.60 per case, or $1,008 for 630 cases. This amount, plus $64 freight charges, makes a total of $1,072. Plaintiff obtained for the cherries in Chicago in their damaged condition $967, which the court deducted from $1,072, leaving a balance of $105, for which amount judgment was entered.

Under the classification of tariffs, filed for the defendant with the Interstate Commerce Commission, it was provided that property not carried subject to the terms of the uniform bill of lading would be carried on the basis of defendant's liability, limited as provided by common law and by the laws of the United States and of the several States in so far as they should apply, and that the freight rate charged would be ten per cent. higher than the rate charged for property carried under the terms of the uniform bill of lading. The plaintiffs had the option of accepting the limitation of the defendant's liability and receiving a reduced rate; or of paying a higher rate, in which event the liability of the defendant would have been that imposed by law. The plaintiffs saw fit to accept the limitation of the defendant's liability as shown in the provision above quoted, in consideration of which they received the benefit of the reduced rate, and the

limitation in question was therefore valid and binding. *Adams Exp. Co. v. Croninger*, 226 U. S. 491.

We are, however, unable to concur with the contention of either the plaintiffs or the defendant as to the method of computing the amount of damages under the limitation referred to. In our opinion the provision in the bill of lading limits the liability of the defendant, if the property was totally destroyed through the fault of the defendant, to the ''bona fide invoice price'' of the property at the time and place of shipment, plus freight charges if prepaid. If the property is damaged through the fault of the defendant, the amount of liability is the amount of the damage provided the same does not exceed the ''bona fide invoice price'' of the property at the time and place of shipment. *New York, P. & N. R. Co. v. Peninsula Produce Exchange*, 122 Md. 215, affirmed by United States Supreme Court, 240 U. S. 34, 36 Sup. Ct. Rep. 230.

In that case the produce company delivered to the railroad company a carload of strawberries for transportation from Maryland to New York. The shipment reached its destination in good condition, but about six hours later than the customary time of arrival. The price of berries at that time had fallen about 2 or 3 cents per quart below the market price at which the berries would have been sold had the car arrived on schedule time. Suit was brought for the loss. The berries were shipped under the uniform bill of lading which contained the same provision as the one above quoted. In discussing the question of damages, the Maryland Court there said (p. 228): ''If the berries had been totally lost or destroyed, recovery would have been restricted to their value at the time and place of shipment. Unless the stipulation in the bill of lading is to be altogether disregarded, the carrier could not justly be charged with a greater loss to the property for delay in transit than would result from an absolute failure of delivery. The value of

the berries as received for shipment would therefore seem to be a proper subject for inquiry in the determination of the carrier's liability. The ordinary measure of recovery would be the 'decline in the market value between the time when they could have been sold, if they had been transported with due dispatch, and the time when they were actually sold.'   *   *   *

"The measure of liability, as already indicated, was the loss of market value, and there was testimony as to the fact and extent of such loss. The offer of proof as to the original value of the berries would not have changed the basis of liability, but would simply have placed a limitation upon the amount of the recovery."

In affirming the judgment of the Maryland Court, the Supreme Court of the United States said (p. 40): "As the court of appeals of Maryland said, the ground of the action was 'the failure to carry with reasonable dispatch, and the loss of marketability is mentioned as the element of damage.' That is, the reference to the market said to have been lost was merely for the purpose of calculating damages which were sought solely because of lack of reasonable diligence, and not upon the allegation of any added duty with respect to a particular train or market.   *   *   *

"The instructions, however, permitted the jury to award as damages the amount of the decline in value, due to the delay, at the place of destination, without stating the limitation set forth in the tariff of the plaintiff in error as filed.   *   *   *   The condition in the bill of lading and in the filed tariff provided that 'the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or

tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence.' Treating the rate charged for the transportation as based upon assent to this provision, the court of appeals construed the stipulation not as changing the basis of liability, but as limiting the amount of the recovery in any event to the value of the property at the time and place of shipment, no other value having been agreed upon. (Citing *Adams Exp. Co. v. Croninger, supra,* and other cases.) It appeared from the evidence that the berries were sold in New York City at an average price of 6½ cents a quart. It was also proved that the decline in value due to the delay was from 2 to 3 cents a quart. * * * The jury gave damages at the rate of 2 cents a quart for 240 crates (7,680 quarts) shipped. The court held that it could not be said, as the defendant contended, that there was no proof of actual damage from the delay; and that, so far as the maximum liability fixed by the filed tariff was concerned, the court was justified in taking the value of the berries at the time and place of shipment as being at least equal to the 2 cents a quart allowed. Upon this point the court of appeals said: 'It may be judicially assumed that their value at the time and place of shipment was at least equal to the 2 cents per quart which the jury allowed as damages, and in the view we have taken of the case no just purpose would be served in reversing the judgment and subjecting the parties to the expense of a new trial.' That is to say, upon the facts as the State court found them to be, the agreed maximum of liability as stipulated was not exceeded.''

In that case it was expressly held that the provision contained in the bill of lading, which is identical with the one in the case at bar, limited the maximum liability that could be recovered in any case, to the ''bona

fide invoice price'' of the property at the time and place of shipment. To the same effect is the case of *J. C. Shaffer & Co. v. Chicago, R. I. & P. Ry. Co.*, 185 Ill. App. 615, where it was held that the maximum amount that could be recovered against the railroad company for failure to deliver the property was the bona fide invoice price at the time and place of shipment. If we should adopt the view of counsel for the defendant, then a railroad company would never be liable for its negligence in failing to deliver goods within a reasonable time, except where the amount received for the goods in their damaged condition was less than the bona fide invoice price at the time and place of shipment. Manifestly this would be a strained and unreasonable construction to place upon the provision in the bill of lading.

In the case at bar, following the rule as to the measure of damage announced by the Maryland Court of Appeals and affirmed by the United States Supreme Court, we find that the 630 cases of cherries were sold in Chicago for $1.75 per case before they were shipped, but on account of the delay, plaintiff was compelled to dispose of them for the following prices: 255 cases, $1.75 per case; 177 cases, $1.60 per case; 198 cases, $1.20 per case, making a total of $967.05. This sum deducted from the amount the plaintiffs should have received for the cherries, $1,102.50, leaves a net loss of $135.45, which amount the plaintiff is entitled to recover.

The judgment must therefore be reversed, but as all the facts are before this court, and as a jury was waived, no reason exists for remanding the cause. A judgment will therefore be entered in this court in favor of the plaintiffs for the amount due, which is $135.45.

*Judgment reversed and judgment in this court.*