Keasler v. Baltimore & Ohio Southwestern R. Co., 203 Ill. App. 61.

construction and operation, and an instruction which directs the jury to fix such damages as they may find them from the evidence, is erroneous and warrants reversal, unless it be supplemented and cured by other instructions.

3. INSTRUCTIONS, § 159*—*when considered as a series.* The instructions given by the court are to be read and considered together, and if when so considered they state the law applicable to the case with substantial correctness, it is sufficient, notwithstanding some one instruction is in itself erroneous.

4. INSTRUCTIONS, § 88*—*when instruction as to determination of preponderance of evidence is not reversibly erroneous.* An instruction as to determining the preponderance of the evidence should include the number of witnesses as one of the elements to be considered, but the omission of this element is not reversible error except where the element of the number of witnesses is shown to be important.

5. APPEAL AND ERROR, § 1491*—*when exclusion of evidence is harmless error.* It is not reversible error to refuse to admit in evidence exhibits consisting of certain records made by a witness with a machine invented by him where he is allowed to give the results of his tests to the jury.

---

## S. R. Keasler, Appellee, v. Baltimore & Ohio Southwestern Railroad Company, Appellant.

1. CARRIERS, § 30*—*what law governs in action in State court involving interstate shipment.* An interstate shipment of freight is governed in an action in a State court for damages for loss of goods by the Interstate Commerce Act and its amendments.

2. CARRIERS, § 33*—*when question of unreasonableness of provision in a contract for interstate shipment as to notice of claim of damages may not be questioned in State court.* The reasonableness or unreasonableness of a provision in a contract for an interstate live stock shipment that no claim for damages in shipment shall be allowed or paid unless such claim is delivered to the general freight agent of the carrier at his office within five days from the time the stock is removed from the car is a question for the Interstate Commerce Commission and not for the State court in which action for such damages is brought, and so long as the filed tariff provides

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

for a notice of this character it is binding upon the shipper as well as the carrier and cannot be questioned in such suit.

3. CARRIERS, § 241*—*when shipper not having actual knowledge of provisions of contract for interstate shipment of live stock as to making claim for injuries is bound.* A shipper of an interstate car of live stock under a contract signed by his agent providing that a claim for damages for loss in shipment must be filed within five days after removal of the stock from the car is not in a position to raise the question that he had no notice of such provision of the contract, where the filed tariff provides for a notice of such character, as such provision of the contract is binding upon him, notwithstanding he may not have had actual knowledge of the stipulation in the contract.

4. CARRIERS, § 241*—*what is effect of failure of shipper of live stock to file claim for damages within required time.* Failure of a shipper of live stock to file his claim for damages for loss in shipment within five days after removal of the stock from the car, as required by his contract of shipment, is a bar to such shipper's right of action for such damages.

MCBRIDE, J., dissenting.

Appeal from the Circuit Court of Gallatin county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the March term, 1916. Reversed. Opinion filed November 13, 1916.

KRAMER, KRAMER & CAMPBELL, ROEDEL & ROEDEL and W. H. HEBENSTREIT, for appellant; EDWARD BARTON, of counsel.

ROBERT H. DAVIS and M. E. LAMBERT, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

Suit was brought by appellee before a justice of the peace of Gallatin county against appellant for the loss of certain hogs in a shipment made by appellee over appellant's railroad. Judgment was rendered in favor of appellee before a justice of the peace. An appeal was taken to the Circuit Court of said county, where a jury was waived and on a trial before the court, judg-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ment was rendered in favor of appellee for $135, from which judgment this appeal is prosecuted.

The evidence discloses that on July 25, 1914, appellee loaded for shipment on appellant's railroad at Omaha, Illinois, a car of hogs billed to Cincinnati, Ohio. The hogs were loaded about 11:35 a. m. on July 25, 1914, and reached their destination at the stockyards at Cincinnati, Ohio, at about 9:35 p. m. on July 26th, and were unloaded at about 10:30 p. m. of said evening, when it was found eleven of said hogs were dead. Appellee insists that the cause of the death of the hogs was the failure of appellant to water them at proper times when requested so to do by Mr. Harrell, the man in charge of said shipment. At the close of the evidence, appellant requested the court to hold as a matter of law the following proposition: "That the plaintiff failed to file his claim with the defendant within five days, as required by the live stock contract in evidence, and that therefore plaintiff cannot recover in this case," which proposition of law was refused by the court and judgment was rendered in favor of appellee as above set forth.

The shipment in question was made under the provisions of what is known as the Uniform Limited Liability Live Stock contract, which contract provides among other things: "That said shipper is at his own risk and expense to load and take care of and feed and water said stock while it is being transported, whether delayed in transit or otherwise, and to unload the same; and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same."

It is further provided in said contract: "That no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper,

unless a claim for such loss or damages shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to the general freight agent of the said carrier, at his office in the City of Cincinnati, Ohio, within five days from the time said stock is removed from said car or cars; and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner, and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs." Said contract contains this further provision: "And S. R. Keasler does hereby acknowledge that he had the option of shipping the above described live stock at a higher rate of freight according to the official tariffs, classifications and rules of the said carrier and connecting carriers, and thereby receiving the security of the liability of the said carrier and connecting railroad and transportation companies as common carriers of the said live stock upon their respective roads and lines, but has voluntarily decided to ship same under this contract at the reduced rate of freight above mentioned."

On the trial of said cause the following stipulation was entered into between appellee and appellant:

"It is hereby agreed by and between the plaintiff and defendant in the above suit that a jury be waived in this court, and the case be tried by the court upon the following facts:

"That the plaintiff, on July 25, 1914, offered to the defendant at Omaha, Ill., 59 hogs for shipment to Talbert & McDonald & Co., Cincinnati, Ohio, and that the defendant accepted said shipment at 11:35 a. m. on said day as per contract, duly executed between the parties hereto attached hereto, and made a part of this stipulation; that said hogs arrived at destination July 26, 1914, at 9:35 p. m., and were unloaded at 10:03 p. m. same day; that when said hogs arrived it was found that 11 hogs were dead; that on August 3, 1914, plaintiff wrote a letter to Mr. C. V. Lewis, freight

claim agent of the defendant at Baltimore, Md., as per letter attached hereto and made a part of this stipulation.

"Either party hereto may introduce such further competent and material evidence in this case not inconsistent to the above facts."

The question, therefore, which is presented by this appeal and which is raised by the proposition of law submitted by appellant and which was refused by the trial court is whether or not appellee was bound by the provisions in said contract requiring him within five days to file his claim for damages, verified by his affidavit, or that of his agent, with the general freight agent of appellant at his office in the City of Cincinnati, Ohio. If appellee is to be bound by said provision in said contract, then the judgment of the trial court will have to be reversed without reference to any other question presented in this record.

Appellee makes no contention whatever that he complied with this provision of the contract of shipment entered into on his behalf by his agent, Harrell. In other words, he does not contend that the letter which he wrote to C. V. Lewis, freight claim agent of appellant at Baltimore, Maryland, on August 3, 1914, some eight days after said shipment was made, is a compliance with the provision of said contract of shipment above referred to, but the insistence of appellee is that the provisions of said contract are unreasonable and therefore are not binding upon him in this case.

This being an interstate shipment, the only question for us to determine is whether or not the courts of this State are bound by the provision of the Interstate Commerce Act with its amendments, and by the construction placed upon the same by the Federal courts as well as the courts of this State. In our view of the law, this is not now an open question as it has been definitely determined, not only by the Federal courts, but also by our Supreme Court, that interstate ship-

ments are governed by the provision of the Interstate Commerce Act.

In the case of *Michelson v. Judson Freight Forwarding Co.*, 268 Ill. 546, at page 556, the court referring to the Carmack amendment to the Interstate Commerce Act says: "This statute has been held by the Supreme Court of the United States to be constitutional. (*Atlantic Coast Line Railway Co. v. Riverside Mills*, 219 U. S. 186.)" It has also been held in construing the act that almost every detail of the subject is covered, and there can be no doubt but that Congress intended by the act to take full possession of the subject of interstate shipments, and that the effect of the act was to supersede all State laws and regulations on the subject. *Adams Exp. Co. v. Croninger*, 226 U. S. 491; *Gamble-Robinson Commission Co. v. Union Pac. R. Co.*, 262 Ill. 400. In the case at bar, the shipment in question was an interstate shipment, and there can be no question but that it is governed by the provisions of the Interstate Commerce Act, including the Carmack amendment.

It is insisted by appellee that the provision in the contract entered into with appellant for the shipment of his stock requiring notice of his claim to be filed within five days is unreasonable. We take it that under the decisions of the United States Supreme Court construing the Interstate Commerce Act that this is not a question to be passed on by this court; that the reasonableness or unreasonableness of the provision with regard to the giving of notice is a question for the Interstate Commerce Commission, and that so long as the filed tariff provides for a notice of this character, it is binding upon the shipper as well as the carrier, and cannot be questioned in a suit for damages. We do not know whether or not this specific question in connection with the notice to be given of a claim for damages has been passed upon by the United

States Supreme Court, but that court has frequently passed upon the question of the effect of the filed tariffs in connection with the limit to be placed on the amount of recovery for loss of goods shipped and in every such case has held the proviso with reference to the amount of recovery in case of loss to be binding on the shipper and the carrier. *Pierce Co. v. Wells Fargo & Co.*, 236 U. S. 278; *Missouri, K. & T. Ry. Co. v. Harriman Bros.*, 227 U. S. 657; *Great Northern Ry. Co. v. O'Connor*, 232 U. S. 508 [8 N. C. C. A. 53]; *Boston & M. R. R. v. Hooker*, 233 U. S. 97; *Pennsylvania R. Co. v. International Coal Min. Co.*, 230 U. S. 184; *Kansas City Southern Ry. Co. v. Carl*, 227 U. S. 639. We have no doubt but a like holding would be made by said court on the provision with reference to notice of claim for damages.

It is next contended by appellee that he had no notice of the provisions of said contract with reference to the five-day clause. We do not believe that appellee is in a position to raise this question as the provision of the contract signed by his agent is binding on him, notwithstanding he may not have had actual knowledge of the stipulations in his contract.

In the case of *Michelson v. Judson Freight Forwarding Co., supra,* at page 558, the court quoting from the case of *Boston & M. R. R. v. Hooker,* 233 U. S. 97, says: "It was held that a regulation contained in the published tariffs of an interstate railway carrier on file with the Interstate Commerce Commission limiting baggage liability to $100 unless a greater value is declared and stipulated by ·the owner, and the excess charges paid, is binding upon the passenger in case of loss of the baggage through the carrier's negligence." This is held to be the law regardless of the passenger's lack of knowledge of or assent to such regulation.

In *Boston & M. R. R. v. Hooker, supra,* quoting from *Adams Exp. Co. v. Croninger, supra,* it was said:

"The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the commission." To the same effect is *Kansas City Southern Ry. Co. v. Carl*, 227 U. S. 639.

Appellee being bound by the provision in the contract entered into with appellant, that notice of any claim for damages must be filed within five days, it will not be necessary for us to pass on the question as to whether or not appellant's alleged failure to water said hogs was the proximate cause of the injury complained of. For although appellee might have had a right of action for damages had he filed his claim in compliance with the provisions of his contract, his failure so to do would bar such right.

The whole theory of the Interstate Commerce Commission is that contracts for interstate shipments must be uniform and must be binding on all shippers and carriers alike, and so long as the tariffs filed with the Interstate Commerce Commission stand, they are not to be disregarded by either shipper or carrier, but are to be uniformly enforced. Not to do so in particular cases would amount to discrimination and would be a violation of the provisions of said act, and the courts are not warranted in countenancing any other than a uniform enforcement of its provisions until changed by the Interstate Commerce Commission under the provisions of said Interstate Commerce Act.

For the failure of the trial court to hold the proposition of law submitted, the judgment of said court is reversed.

*Judgment reversed.*

Mr. Justice McBride dissents.