## E. Looney, Appellee, v. Oregon Short Line Railroad Company, Appellant.

### Gen. No. 20,278.

## Lester C. Seawell, Appellee, v. Oregon Short Line Railroad Company, Appellant.

### Gen. No. 20,279.

1.   CARRIERS, § 189*—*when connecting carrier liable under Carmack amendment on reshipment.* In an action against a railway company to recover damages for the shrinkage in weight and depreciation in value of stock, shipped from one State to another over connecting lines, the shipper, under the Carmack amendment to the Interstate Commerce Act, is entitled to recover from the connecting carrier where such carrier, without any reference to the contract of the initial carrier, makes a new contract of shipment from the place of delivery to it, to which the shipper assents.

2.   CARRIERS, § 107*—*when evidence of reasonable running time admissible.* Where in an action against a carrier for damages caused by delay in the transportation of stock, evidence as to the reasonable running time between the termini of the shipment was claimed to have been improperly admitted because the question did not show whether the witness was to include time consumed in feeding and watering, it was *held* that the evidence was properly admitted, the witness evidently having understood the question as including stops, and having in his answers made allowance therefor.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding.   Heard in the Branch Appellate Court at the March term, 1914.   Affirmed.   Opinion filed April 22, 1915.

JOHN A. SHEEAN, for appellant.

CHARLES A. BUTLER, for appellees; FRANKLIN RABER, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

These two cases were tried together in the Municipal Court, and have been consolidated for hearing in this court. A verdict and judgment were rendered in the Municipal Court in each case against the appellant Railroad Company for damages resulting from the negligent transportation of sheep from Weiser, Idaho, to Chicago.

The two shipments were carried in the same train. The shipment of appellee Looney consisted of 3,849 "lambs," and the Seawell shipment consisted of 2,588 sheep, of which 143 were yearling wethers, and the remainder were "lambs." In accordance with the custom in such cases, and in compliance with the federal statute requiring live stock to be unloaded, fed and watered at intervals of from twenty-eight to thirty-six hours along the route, the sheep were unloaded for that purpose at Pocatello, Idaho, at Rawlins and Laramie, Wyoming, at Grand Island, Nebraska, and at Rochelle, Illinois. There is evidence tending to prove that on account of unusual delays at one or more of these stopping places, and on account of the lack of sufficient feeding and watering facilities at several of them, there was an abnormal shrinkage in weight and a material depreciation in the value of the sheep during the journey. There is also evidence tending to refute this theory. Upon the questions of fact involved, we cannot say that the verdicts are manifestly contrary to the weight of the evidence.

It appears from the evidence that both shipments were first loaded into cars for transportation to Chicago at a station named Evergreen, upon the line of the Pacific & Idaho Northern Railway Company, seventy-six miles from Weiser. That company issued to each shipper at that time a printed form of receipt or bill of lading entitled: "Limited Liability Live

Stock Contract," containing many provisions, limitations and conditions. Each of these contracts recites that the shipper has delivered to the railway company a specified number of cars of sheep, consigned to the shipper "at Chicago, Illinois, via C. & N. W., to be transported upon the conditions hereinafter set forth over the line of Pacific and Idaho Northern Railway Company, to Weiser (insert only a station on the P. & I. N. Ry.) and there delivered to the consignee, owner or order, or to such company or carrier (if the stock is to be forwarded beyond said station) whose line may be considered a part of the route to destination." It also appears from the evidence that when the train arrived at Weiser these contracts were surrendered and new receipts or contracts, in practically the same form and containing the same conditions and limitations, were issued to the shippers by the appellant Company.

It is conceded by all the parties that their respective rights and liabilities are fixed by the federal statute commonly known as the Carmack amendment to the Interstate Commerce Act, but counsel disagree as to the practical effect of that act when applied to the facts above stated. The Carmack amendment provides, in part, as follows: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass; and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such receipt or bill

of lading of any remedy or right of action which he has under existing law.'' Following this clause is a provision that the common carrier issuing such receipt or bill of lading shall be entitled to recover from the carrier upon whose line such loss or damage occurs, the amount the former may be required to pay for such loss or damage, as evidenced by any receipt or judgment therefor.

Appellant contends that the liability created by that portion of the statute above quoted in favor of the holder of a bill of lading of an interstate shipment of property is imposed upon the "initial" or "primary" carrier only, and not upon any succeeding or connecting carrier; and in view of the admitted fact that the sheep here in question were first delivered by appellees to the Pacific & Idaho Northern Railway Company at Evergreen, Idaho, for transportation to Chicago, appellant contends that it is not liable to appellees for the damages recovered in these cases, notwithstanding the execution of the second contract by it when it received the sheep at Weiser.

The Carmack amendment has been construed by the Supreme Court of the United States in a number of cases, the most important, perhaps, of which are the following: *Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 186; *Galveston, H. & S. A. Ry. Co. v. Wallace,* 223 U. S. 481; *Adams Exp. Co. v. Croninger,* 226 U. S. 491; *Kansas City Southern Ry. Co. v. Carl,* 227 U. S. 639. It has also been considered by the Supreme Court of this State in several cases, the latest of which, so far as we are advised, is *Gamble-Robinson Commission Co. v. Union Pac. R. Co.,* 262 Ill. 400. The following quotation from the opinion filed in that case expresses, in a paragraph, the view of both courts regarding the relations that exist between the first carrier and the succeeding carriers in cases of interstate shipments of property, since the

passage of the Carmack amendment: "In *Galveston, Harrisburg and San Antonio Railway Co. v. Wallace,* 223 U. S. 481, it was held that under the Carmack amendment whenever a carrier accepts goods for shipment to a point on another line in another State it is conclusively treated as having made a through contract; *that it thereby elects to treat the connecting carrier as its agent* and must be treated as though the point of destination was on its own line." (Italics ours.)

Under this interpretation of the Carmack amendment, it is undoubtedly true that when the Pacific & Idaho Northern Railway Company received the sheep of appellee at Evergreen, Idaho, for transportation to Chicago, Illinois, that company was the *principal* contracting carrier, and all the subsequent carriers were merely its *agents*. It is also true that this relation of principal and agent continued to exist between the Pacific & Idaho Northern Railway Company and appellant up to the time the sheep were turned over by the former to the latter at Weiser. And if, thereafter, the appellant Company, had been content to occupy the position of a connecting carrier merely, and to act as such in handling these shipments beyond Weiser, it is quite as clear that its liability under the Carmack amendment in such case would have been limited to the liability of an agent of the first carrier, that is, to the amount of any loss or damage occurring upon its own line.

For some reason not disclosed by the evidence, appellant did not choose, however, to remain in the position of an agent of the Pacific & Idaho Northern Railway Company, after it received appellees' sheep at Weiser, but, on the contrary, wholly ignoring the contracts of appellees with the first carrier, appellant elected to put itself in the position of a first or principal carrier of these shipments from Weiser on, by

making new contracts with appellees, precisely as though the sheep had not been first delivered to another carrier, but had been driven on foot to Weiser and there loaded for the first time into appellant's cars for transportation to Chicago. These new contracts make no mention of any prior contract. There is no reference in them to the fact that the sheep were delivered to appellant by another carrier. They state "that the said *shipper* has delivered" to appellant certain sheep, consigned to a specified consignee at Chicago, to be transported over the line of appellant to Granger (Wyoming) and there delivered "to such company or carrier whose line may be considered a part of the route to destination." By its own act in executing these contracts, appellant signified its intention not to handle these shipments merely as an agent of the Pacific & Idaho Northern Railway Company, but to act upon its own responsibility and treat the shipments as having originated at Weiser. Having thus voluntarily placed itself in the position of a primary or initial carrier with the acquiescence of appellees, we think it cannot now be heard to assert that it acted only as the agent of the Pacific & Idaho Northern Railway Company with respect to these shipments.

Appellant's counsel relies mainly upon the cases of *Aton Piano Co. v. Chicago, M. & St. P. Ry. Co.*, 152 Wis. 156, and *Atchison, T. & S. F. Ry. Co. v. Word*, 159 S. W. 375, and *Missouri, K. & T. Ry. Co. v. Ward*, 169 S. W. 1035, decided by the court of Civil Appeals of Texas, as supporting his contention. We do not regard the cases as in point. In none of them was the question here involved presented or discussed. In each of them the carrier first receiving goods for interstate transportation, when sued by the shipper or holder of a bill of lading issued by it, attempted to absolve itself from the liability imposed by the Car-

mack amendment by showing that it had delivered the goods in good order to a connecting carrier, who had issued a second bill of lading for the same; and it was held, in substance, that the duties and liabilities of the parties, under the Carmack amendment, were fixed by the act of the first carrier in accepting the goods for interstate transportation, and that such duties and liabilities could not be affected by the making of a second contract with a connecting carrier. In each of such cases, the owner of the goods was standing squarely upon the original contract of carriage, and was insisting that the connecting carrier could not lawfully change that contract without his consent. In the present cases, the owners are not asserting any liability upon the original contract—which was in fact surrendered—but are standing upon the contracts executed, with their consent, by the connecting carrier, so far as the terms and conditions thereof are not inconsistent with the provisions of the Carmack amendment. None of the cases cited holds that there is anything in the Carmack amendment that prevents an owner from entering into a new contract with a connecting carrier, by which, in effect, the connecting carrier becomes the initial carrier in a new shipment, beginning with the delivery of the goods to the connecting carrier. It is one thing to hold that an initial carrier cannot avoid its liability under the Carmack amendment by proving the execution of a second bill of lading by a connecting carrier, when such second bill is issued without the consent of the owner of the goods, and quite a different thing to hold that the second carrier may avoid liability as an initial carrier, when, with the owner's consent, it has voluntarily assumed the duties and liabilities of an initial carrier.

It is to be noted that the words "initial" and "primary" carrier are not found in the Carmack amendment. The liability imposed by that act is imposed

upon "any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State." Under ordinary circumstances, this means the carrier first receiving the goods, and in cases where such was the fact the words "initial" or "primary" carrier have been used by the courts to distinguish such a carrier from a succeeding or connecting carrier. The act provides that no contract, receipt, rule or regulation shall exempt any carrier receiving property for interstate transportation from the liability of a through carrier; but it does not provide that a connecting carrier receiving property for interstate transportation may not, with the consent of the owner, treat the shipment as beginning at the point where it receives the property from another carrier, and thereby assume the liability imposed by the Carmack amendment.

We conclude, therefore, that the court did not err in overruling the several motions and numerous objections of appellant based upon the view of the law contended for by appellant's counsel.

It is also urged that the court erred in admitting evidence, over appellant's objection, as to the reasonable running time between Weiser and Rochelle and Chicago. The objection made to this evidence at the time was merely that it was incompetent, irrelevant and immaterial, and that no proper foundation had been laid. The objection here made is that the questions put to the witness did not show whether the witness was expected to include in his answer the time ordinarily consumed in feeding and watering the stock at the several stations provided for that purpose. We think there was no error in the ruling, for the reason that the Federal statutes require stock to be unloaded for the purpose of feeding and watering the same at intervals of from twenty-eight to thirty-six hours, and it would naturally be assumed that all

ordinary, reasonable stops for that purpose were included in the reasonable running time of such a train from Weiser to Chicago. The witness evidently so understood the question, for he testified that he included four of such stops in his answer as to the reasonable running time between Weiser and Chicago.

The point made that the claims were not presented within the time limited by the contracts seems not to be supported by the evidence, as claims were in fact made within ten days from the time the sheep arrived at destination.

Several other minor objections are urged. We have carefully considered the same and think they are without merit.

For the reasons indicated, the judgments of the Municipal Court will be affirmed.

*Affirmed.*