# R. S. Newman and Charles Maixner, trading as Newman & Maixner, Appellees, v. Union Pacific Railroad Company, Appellant.

## Gen. No. 23,117.

1. APPEAL AND ERROR, § 1410*—*when finding not against manifest weight of evidence.* The finding as to defendant carrier's negligence in the shipment of certain live stock, based upon conflicting evidence, *held* not against the manifest weight of the evidence.

2. CARRIERS, § 241*—*when failure to give proper notice of loss or damage shown.* Evidence *held* to show that plaintiffs failed to comply with all the requirements of their contract of shipment of certain live stock as to notice of loss or damage in transit, except as to one 10-carload delivery.

3. CARRIERS, § 241*—*when federal act governs contracts for shipment of live stock.* Shipping contracts for the interstate shipment of live stock containing provisions requiring notice to be given the carrier within a given time of loss or damage in transit are subject to the Carmack amendment to the Interstate Commerce Act.

4. CARRIERS, § 241*—*binding effect of provision for notice of loss or damage to live stock.* The requirement, in a shipping contract for the interstate shipment of live stock, of notice within a given time of loss or damage in transit is rigorously binding, and neither party is entitled to set up by way of defense the unreasonableness of the requirement.

5. CARRIERS, § 245*—*when shippers suing in tort may not avoid effect of contract.* Shippers of live stock under a written contract for interstate shipment containing provisions requiring notice to the carrier within a given time of loss or damage in transit may sue in tort for such loss or damage, but will not be allowed to avoid the effect of such provisions.

6. CARRIERS, § 250*—*when instruction on compliance with requirement of contract as to notice of loss or damage is erroneous.* An instruction to the effect that if the defendant carrier had knowledge, within the time required by a contract for the interstate shipment of live stock for notice to be given to the carrier by the shipper of loss or damage in transit, of the loss or damage to the plaintiff's live stock for which plaintiff sought recovery, then, as a matter of law, such requirement of the contract was complied

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

with, *held* to be erroneous, in an action to recover for loss or damage to live stock in transit.

Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1917. Reversed and remanded. Opinion filed March 13, 1918.

JOHN A. SHEEAN, for appellant.

CHARLES A. BUTLER, for appellees; FRANKLIN RABER, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This was a suit in assumpsit brought by appellees (plaintiffs) in the Circuit Court of Cook county, against appellant (defendant) to recover damages for a breach of contract in the transportation and handling of three shipments of sheep. A trial was had before a jury and on December 23, 1916, a verdict for the sum of $6,260 and costs was rendered against defendant. On December 29, 1916, plaintiffs (after verdict), by permission of the trial court, changed their form of action to tort and filed an amended declaration and an amended bill of particulars, whereupon judgment was entered on the verdict for the full amount. From that judgment this appeal was taken.

On September 2, 1913, plaintiffs shipped 24 cars of sheep from Evanston, Wyoming, over the Union Pacific Railroad, defendant, under a written contract to deliver them in Chicago, Illinois. When this shipment reached Valley, Nebraska, its destination was changed to South Omaha, Nebraska, where it was unloaded and marketed.

When the 24 cars left Evanston on September 2, 1913, they contained 5,279 lambs and 1,776 ewes, which, according to the evidence, were about 80 per cent. killers, and the balance feeders.

The contract of September 2, 1913, which was a limited liability contract of shipment made between the plaintiffs and the defendant, provided, among other things, as follows:

"In consideration of the special reduced rate herein provided for the transportation of live stock above described, it is hereby stipulated and agreed as follows: * * * Unless claims for loss, damage or detention are presented within ten days from the date of the unloading of certain stock at destination, and before said stock has been mingled with other stock, such claims shall be deemed to be waived, and the carriers of each thereof shall be discharged from liability."

On September 18, 1913, plaintiffs shipped, under a written contract, to Chicago, Illinois, from Evanston, Wyoming, a second consignment of 20 cars of sheep, over the Union Pacific Railroad, defendant. On the same day 5 more carloads of sheep were picked up at Altamont, Wyoming (about 13 miles from Evanston) and consigned, under a written contract with said defendant, Union Pacific Railroad Company, to South Omaha, Nebraska. The 25 cars were then carried in the same train as far as Grand Island, Nebraska. At Laramie and at Grand Island the sheep on all the 25 cars were unloaded for feed, water and rest. At both places the two shipments of the 20 cars and the 5 cars became mingled together and thereby lost their identity. At Grand Island 14 of the 25 carloads were sent to South Omaha and the remaining 11 carloads to Chicago.

The contract between the plaintiffs and the defendant, for the shipment of the 20 cars from Evanston on September 18, 1913, which was a limited liability contract, provided as follows:

"The said shipper further agrees that as a condition precedent to his right to recover any damages for loss of or injury to any of said stock, he will give notice in writing of his claim therefor, to some officer

of said carriers or to their nearest station agent, before said stock has been removed from said place of destination and before such stock has been mingled with other stock, and present a formal statement of his claim duly verified to said carriers within sixty days thereafter.''

The contract made between the plaintiffs and the defendant in regard to the 5 carloads shipped from Evanston and made on September 18, 1913, and which became part of the same train with the 20 cars, contained a similar provision in regard to giving notice as to any claim for damages as the contract of September 2, 1913, which latter covered the 24 cars shipped from Evanston.

Considerable evidence was offered for the purpose of showing negligence in the transportation of all of the 49 carloads of sheep. The total shipment aggregated about 14,000 head of sheep and lambs. They were received by the defendant, Union Pacific Railroad Company, as initial carrier. The evidence shows that the sheep suffered severely on the way, many dying and a majority of the others shrank in weight in an unusual degree. In the first shipment of 24 cars from Evanston, Wyoming, to Omaha (September 2, 1913), about 100 died on the way to the town of Valley, and, after being unloaded for the purpose of being fed, about 200 died there in the pastures, the greatest number dying in what was shown to be the best pasture. There were 5,335 lambs and 1,829 ewes loaded into the 24 double-decked cars and when they reached Omaha they were in an unusually poor condition. Of the second shipment, that of September 18, 1913, consisting, in part, of 20 carloads from Evanston, some of the sheep began to die before reaching Altamont, which is only 13 miles east of Evanston. One of the plaintiffs who accompanied the train testified they took out 3 dead sheep at Altamont. When the train left Altamont it consisted of 25 carloads and,

at the next stop, one of the plaintiffs testified he took out 6 dead sheep and took out dead sheep at nearly every stop until the train reached Grand Island, about 600 miles from the starting place. He further testified that when they reached the latter place the sheep looked badly shrunken and were in poor condition.

It is the claim of the plaintiffs that the unusual loss and damage to both shipments was caused chiefly by the unnecessary delays and severe jolting of the cars, by reason of which an injurious "piling up" of the sheep was caused.

Considerable testimony was given by experienced sheep men, witnesses for the defendant, tending to show that the cars were overloaded, in some instances as high as 300 sheep being loaded in a single car; that the sheep were not fed enough, and especially at one stop, namely, the first stop, where, after traveling 400 miles, they were given a pound of hay to the head, whereas they should have had at least 4 to 5 pounds each; that instead of being kept only a few hours at feeding stations, they should have been allowed at least 24 hours for rest and feed; that the death of the large number at Valley, where a majority of the deaths took place in the best pasture, was caused by colic brought on by overeating rich grasses after a long fast.

The evidence as to whose fault it was that so many sheep died and so many lost weight is conflicting. That there was considerable unnecessary delay in handling the trains at various points along the way seems to be fairly well established. On the other hand, as to the fatalities of the September 18th shipment, beginning at Altamont and continuing at nearly every stopping place, and the losses at Valley in the first shipment, it is difficult to attribute them to the negligence of the defendant. However, the negligence charged was an appropriate subject for the determination of the jury, and, in view of what the record con-

tains, we do not feel justified in concluding that the verdict of the jury upon that subject was clearly and manifestly against the weight of the evidence.

In the view we take of the case, however, the general subject of negligence on the part of the defendant becomes unimportant. It is contended by the defendant that the plaintiffs failed to comply with the requirements of the three so-called limited liability livestock contracts.

We will first consider the 24-car shipment of September 2, 1913, which was originally billed to Chicago and subsequently diverted to Omaha. Of the 24 cars, 14 reached Omaha on Sunday, September 7, 1913. Plaintiffs' witness Dohan, head buyer for Cudahy, testified that he sorted the 24-car shipment of September 2nd at Omaha and ordered 14 cars into the market on Sunday the 7th of September and sold about two-thirds of them on the 8th, and the remainder on the 9th. The remaining 10 carloads arrived at South Omaha at 7:15 a. m., September 11th, and were sold either on that day or the next. Anderson, the assistant superintendent of the defendant, testified from the train sheets that the 14 carloads reached South Omaha at 3:45 a. m. on September 8th, and that the other 10 carloads arrived there on September 11th. Newman, on behalf of the plaintiffs, testified that the 14 carloads were all sold on Monday, September 8th, the day they arrived, and that the remainder, 11 carloads, were sold on the 9th. The result of the evidence as to arrival and sale, however, is to the effect that two-thirds of the 14 carloads were sold on Monday, September 8th, the remaining one-third on September 9th, and that the 10 carloads were sold on September 11th. On September 19, 1913, the attorney for plaintiffs mailed, in Chicago, a letter with an inclosure to the claim agent of the defendant at Omaha, Nebraska, which letter and inclosure notified the defendant that the plaintiffs made a claim for loss and damage incurred

in the shipment of "sheep from Evanston, Wyoming, to Chicago, Illinois via Union Pacific Railroad, arriving at Chicago on or about September 10, 1913, as follows:  To excess shrink, depreciation in value due to condition and appearance on arrival, and sheep lost in transit....$4787.10.''  It will be observed that the notice, either by inadvertence or otherwise, makes a claim for loss and damage to sheep shipped from Evanston to Chicago and arriving at Chicago, and does not in any way refer to loss and damage to sheep shipped from Evanston to South Omaha.  Further it may be assumed that the defendant did not receive that notice until September 20, 1913.  On October 4, 1913, the attorney for the plaintiffs sent, by mail, from Chicago, what is called an amended claim in which it is recited that the loss and damage incurred was through a shipment of sheep and lambs from Evanston to South Omaha.  From the foregoing it is obvious that as to the 14 carloads which were sold on September 8th and 9th, the notice, which was mailed on September 19th, and received not earlier than September 20th, was not within the 10 days, and, therefore, was insufficient.

The contract of September 18, 1913, covering the Altamont shipment of 5 carloads, also provided for a 10 days' notice of claim for damages.  That shipment was taken up and made a part of the 25-car train from Evanston on the same date.  The sheep of those two shipments, of 20 cars and 5 cars, were intermingled in transit at the feed places so that it became impossible to tell under which contract any of those sheep actually were shipped.  When the trainload of 25 cars reached Grand Island it was divided into 14 carloads which were delivered at South Omaha, arriving there September 23rd and 11 carloads, which were delivered at Chicago, arriving there September 25, 1913.

It is, of course, impossible to determine whether

the requirement of a 10 days' notice of claim for loss or damage applied to 5 of the 14 cars sold at South Omaha, or 5 of the 11 cars sold at Chicago, and, also, it is impossible to determine whether the provisions of the contract of September 18, 1913, that a written notice of claim shall be given to some officer of the defendant or its nearest station agent before the stock has been removed and before it has been mingled with other stock, and present a formal statement of his claim, duly verified, to said carriers, within 60 days thereafter, apply to the 14 cars delivered at Omaha, or to the 11 cars delivered at Chicago, and 9 delivered at South Omaha.

No specific notice of claim was sent concerning the Altamont, September 18, 1913, shipment of 5 carloads to Omaha, or concerning the 20 carloads sent to Chicago. On October 2, 1913, two notices of claim were sent to the defendant's freight agent at Omaha, one for loss and damage to 3,255 lambs, being 11 carloads shipped from Evanston to Chicago, and the other for loss and damage to 2,533 lambs, for 1,592 ewes, being 14 carloads shipped from Evanston to Omaha. No further notice of claim was made by the plaintiffs. As stated above, the contract for the Evanston shipment of 20 carloads of September 18, 1913, contained no 10-day clause, but, in addition to a stipulation that notice in writing should be presented before the sheep were removed and mingled with others, it was provided that a formal statement of claim, duly verified, should be sent to the defendant within 60 days after the removal of the sheep from the place of destination. Neither requirement was complied with. All the sheep, not only of the 20 cars, but the 25 cars, were sold and mingled and lost their identity before any notice whatever was given and no formal statement of claim, duly verified, was, within 60 days of the sale and mingling of the stock, sent to the carrier.

The sheep were all shipped at reduced rates. The

rate otherwise, had it not been for the limited liability contract, would have been 150 per cent. of the rate actually charged. The tariffs and a copy of each of the contracts were duly filed, with each statement, with the Interstate Commerce Commission and published and declared.

The plaintiffs admit the binding force of the 10-day notice clauses, and, also, that there has been no waiver and no estoppel, but contend that they complied with all the provisions of the shipment contracts. We are of the opinion that the evidence shows a failure to comply with all the notice requirements, with the exception of that which was sent on September 19, 1913, and covered the 10 carloads of sheep which were sold in South Omaha on September 11, 1913.

It is contended further by counsel for the plaintiffs that a limited liability contract containing a double provision, such as the contract of September 18, 1913, is legally complied with if the claim is filed within 60 days, and *Looney v. Oregon Short Line R. Co.*, 192 Ill. App. 273, and *Chicago, I. & L. Ry. Co. v. Priddy* (Ind. App.), 115 N. E. 266, are cited.

Being interstate shipping contracts all three are subject to the Carmack Amendment to the Hepburn Act, and the law in regard to the validity of the provisions in such contracts which require a written notice within a given time, or, for example, before stock is removed from place of destination or mingled with other stock, is now well settled. *Northern Pac. Ry. Co. v. Wall*, 241 U. S. 87; *Erie R. Co. v. Stone*, 244 U. S. 332 (decided June 4, 1917).

The reason for the requirement of notice is that there may be apt opportunity on the part of the carrier to make an investigation; it is not for the purpose of evading liability. The requirement in some instances may seem harsh, but it is the voluntary obligation of the shipper for a consideration, and has an entirely practical and useful purpose. *Georgia, F. &*

*A. R. Co. v. Blish Milling Co.*, 241 U. S. 190. It follows, therefore, that the provisions as to notice, which are contained in all three of the limited liability contracts, here involved, are rigorously binding, and that neither party to those contracts is entitled to set up, by way of defense, even their unreasonableness. To that extent *Chicago, I. & L. Ry. Co. v. Priddy, supra,* seems to be overruled. In *Erie R. Co. v. Stone, supra,* Mr. Justice Day used the following language: "These rates and that contract, which contained the notice requirement, thus became binding upon the parties until changed by order of the Commission. This is too well settled to need discussion. * * * The binding force of these contracts and regulations has been affirmed in many cases: *Kansas City Southern R. Co. v. Carl,* 227 U. S. 639, 652; *Boston & M. R. Co. v. Hooker,* 233 U. S. 97, 112; *Louisville & N. R. Co. v. Maxwell,* 237 U. S. 94, 98; *Great Northern Ry. Co. v. O'Connor,* 232 U. S. 508, 515 [8 N. C. C. A. 53]; *George N. Pierce Co. v. Wells, Fargo & Co.,* 236 U. S. 278, 285; *Southern R. Co. v. Prescott,* 240 U. S. 632, 638; *Cincinnati, N. O. & T. P. Ry. Co. v. Rankin,* 241 U. S. 319; *Norfolk Southern R. Co. v. Chatman,* 244 U. S. 276."

It is contended further by the appellant that it was error on the part of the trial court to permit the plaintiffs, after verdict, to change the action from contract to tort. Whether the trial court exceeded its discretion in allowing the amendment pursuant to chapter 110, par. 39, Rev. St. (J. & A. ¶ 8576), is undoubtedly debatable, but, inasmuch as the judgment will be reversed and the cause sent back for a retrial, it becomes unnecessary for us here to consider that question. There is no doubt but that the plaintiffs are entitled to sue in tort, but in doing so they will not be allowed to avoid the effect of the stipulations as to notice. As said by the court in *Georgia, F. & A. R. Co. v. Blish Milling Co., supra,* which was a case in trover

against a carrier for a misdelivery of flour: "But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act; nor could the carrier, by its conduct, give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations."

It is contended further by appellant that Instruction No. 12, which was given at the request of the plaintiffs, which was to the effect that if the defendant "had, within the time mentioned in said contracts, actual knowledge of the damage, if any, claimed by the plaintiffs herein, then, and in that event, as a matter of law, the said provision, if any, in said contract was complied with," was improper. Bearing in mind that the jury may have inferred from the evidence that the defendant did have actual knowledge of some damage to the sheep, and the principle of law, that actual knowledge does not dispense with written notice, we are of the opinion that the trial court erred in giving such instruction. Inasmuch as the notice of September 19, 1913, was good as to 10 carloads of sheep, another trial becomes necessary.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*