ILLINOIS CENTRAL R. R. Co. *v.* SMITH.

[80 South. 776, Division B.]

CARRIERS. *Live stock. Bill of lading. Construction. Loss. Damage.*
  Where a bill of lading for an interstate shipment of cattle provided that it is agreed by the shipper that no claim for loss or

damage shall be valid unless it shall be made in writing within ten days, and because of the carriers' failure to properly tag the car, the cattle were unloaded in a quarantine division pen and a lesser price was obtained, recovery may be had, though the notice provided for was not given, there being in such case neither "loss" nor "damage," since the bill of lading will be construed to mean that the "loss" referred to is a loss of the thing shipped, and the word "damage" means some physical impairment of the article shipped.

APPEAL from the circuit court of Marshall county. HON. J. L. BATES, Judge.

Suit by W. T. Smith against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts of this case are fully set out in the opinion. It is only necessary to add that the bill of lading referred to in the opinion contained, among other things, the following clause:

"It is further agreed by the shipper that no claim for loss or damage to said stock shall be valid against said company, unless it shall be made in writing, verified by affidavit delivered to the general freight agent or freight claim agent of the railroad company, or to the agent of the company, at the station from which the stock is shipped, or to the agent at the point of destination, within ten days from the time the said stock is removed from said cars."

*Wells, May & Sanders,* for appellant.

It will be observed that this was an interstate shipment of cattle, one car being shipped on May 28, 1912, and another car on August 10, 1912.

The sole question presented by this appeal is as to whether or not, under the terms of the contract of affreighment, the plaintiff in this court below, was entitled to any recovery against the defendant where his contract required that notice of loss should be filed within ten days after delivery, he filed no written

claim with any proper agent of the carrier as named, and required, by the contract, and whether or not he was on that account precluded from any recovery.

It appears to us that this question is settled and put at rest by the opinion of this court in the case of the *I. C. R. R. Co.* v. *W. J. Davis & Co.,* 72 So. 974, the opinion of the court having been rendered on October 23, 1916.

The agreed statement of facts on the trial in the court below shows that no written notice was given by the appellee to any of the agents mentioned in the contract of shipment, within ten days, the limitation provided in the contract for giving written notice of claims for loss.

In the Davis case, cited *supra,* this court used the following language: "In the case of *G. S. F. & A. R. R. Co.* v. *Blish Milling Co.,* 241 U. S. 190, 60 Law Ed. 948, it is held that the provision in the bill of lading requiring the claim to be filed within a stipulated time, is valid. . . . The shipment of stock in the case before us, was an interstate shipment, and of course, the rule announced by the Federal courts in such cases will be followed by the state courts. We think the stipulation in the contract in the case now before us is reasonable and valid. (Citing numerous authorities). . . . There was no waiver here, by the appellant railroad company, according to this record, of the stipulation of the ten days' notice in the contract. The appellee did not file his claim in writing with any of the proper agents of the railroad as named and required by the terms of the contract, but he claims to have originally mentioned the damage or loss to a travelling freight agent of the appellant, who had no authority to receive such notice or to deal with such matters. The appellee, according to the proof of this record, having failed to file his claim for loss and damage within the time provided by the contract, is now precluded from recovery."

As to the validity of the ten days' limitation in the contract, see the following: *I. C. R. R. Co.* v. *Bauer,* 75 So. 376; *Hamilton* v. *Cleveland, etc., R. R. Co.,* 206 Ill. App. 270, *N. C. & St. L. R. R. Co.* v. *Kamper,* 78 So. 925; *Olson* v. *Chicago, etc., R. R. Co. et al.,* 250 Fed. Rep. 372; *Houston, etc.,* v. *Houston Pckg. Co.,* 203 S. W. 1140; *Kenney* v. *Chicago, Burlington, etc., R. R. Co.,* 167 N. W. 475; *St. L. & I. Mt.* v. *Starbird,* 243 U. S. 592; *Jordan* v. *Chicago, etc., R. R. Co.,* 196 S. W. 417.

Many other decisions of federal and state courts might be cited, but in our view of the question presented by this record, the case of *Illinois Central R. R. Co.* v. *W. J. Davis & Co.,* cited *supra,* settles the question in favor of the appellant and we respectfully submit that the judgment of the lower court should be reversed and a judgment here entered in favor of the appellant.

*L. A. Smith,* for appellee.

It is the contention of appellee in this case, first, that the clause recited in appellant's brief at page 3, did not require him to give any notice whatever to appellant as the plain intent of the clause is to notify the carrier of loss or damage to any of the stock in this shipment. The court's attention is called to the phraseology of this section, viz: "No claim for loss or damage to stock," that is, a claim for a tortious act which would cause loss or damage to the stock itself. Loss is, of course, total, while damage is partial, and neither is claimed in this case, with reference to the stock, but the claim is for compensation from appellant for negligently causing the unlost and undamaged stock to be unloaded into a limited market, when by doing its duty, appellant would have unloaded them in the unlimited market. For instance, it does not appear, and is not contended, that any of the cattle shipped failed to reach the destination, or that any of the cattle reached its destination crippled, or shrunk, or dead, and hence there

could be no loss of the cattle or damage to the cattle, but the injury complained of is rather a damage to the market accessible to appellee by narrowing his opportunity to sell because of appellant's negligence in compelling these cattle to be sold at infected cattle prices. Appellee was denied access to the market where higher prices obtained and forced to submit to the lower prices of infected cattle.

This conception of the meaning of the words "loss and damage," seems to be that of reason and common sense and the plain meaning of the English language, and the courts have so held. For instance, in the case of injury or destruction of the property insured, or injury by accident or liability for death, the liability is called a "loss." *State* v. *Pitts, C. C. & St. L. Ry. Co.,* 67 N. E. 93, 96 Ohio State, 9, 64 L. R. A. 405, 96 Am. State Rep. 635. The supreme court of Georgia, in defining the meaning of the word "loss," as used in section 2064 of the Georgia Code, declaring that all cases of bailments after proof of loss put the burden of proof on the bailee to show proper diligence, says it means injury or damage to goods, as well as for the destruction or disappearance. *Hawkins* v. *Haynes,* 71 Georgia, 40, 43.

"A bill of lading stipulating that in the event of the loss of any property, etc., the value or cost of the same at the point in time of the shipment is to govern, does not include a delivery of the goods at the point of destination to a wrong person." *Baltimore & Ohio R. R. Co.* v. *McWhinney,* 36 Ind. 436, 441. Substitute for the word "person" the word "pen" and it will still be a good law, and carry out the reasoning and sense of the learned court to the effect that loss and damage mean what they imply, and that delivery of stock to the wrong pen, the stock themselves being all accounted for and all uninjured, does not mean loss or damage to the stock. Loss is a generic term, of which

damage is a species. They are synonymous. *Faynes v. Parker,* 16 Am. Rep. 570.

So, appellee most respectfully insists that said clause by its very nature, had no application to a case of the kind at bar and imposed on him no duty, whatever to to give written notice within ten days to the carrier, either at destination or at any point of origin, and his failure to do so does not debar him from getting the compensation for his diminished profits so unjustly and negligently entailed upon him by the negligence and fault of the appellant carrier.

COOK, P. J., delivered the opinion of the court.

The appellee, on August 10, 1912, made a shipment of cattle from Lamar, Miss., which was at the time within that portion of the state of Mississippi whence cattle could be shipped as being free from tick infection. The destination of this cattle was National Stockyards, Ill. Appellee duly paid the freight on this shipment. Under the rules and regulations of the United States Department of Agriculture then in force, with reference to the infection of cattle with ticks and the shipment of the same, it was required that the railroad company should label each car to show certain facts with reference to tick infection, and at the destination of the cattle shipped in this case over the railroad of appellant were maintained accordingly two separate and distinct yards for receiving shipments of cattle. This was done in order to comply with government regulations. One yard was termed the "Native Division Pen" and the other the "Quarantine Division Pen." It was the duty and was required of it by the government for the appellant in accepting and loading shipments of cattle from the Lamar section of Mississippi to label its cars of cattle to show in which of these pens the said cattle were entitled to be unloaded. The cattle in the instant case were entitled to

be unloaded in the "Native Division Pen," and if they had been so unloaded this lawsuit would never have arisen. But the appellant negligently failed and omitted to tag and label the car as required, and to show that fact, and hence under the requirements of the said regulations the cattle had to be, and were unloaded in the "Quarantine Division Pen." The cattle in the "Native Division Pen" are free from tick infection or contagion, and those in the "Quarantine Division Pen" are not. This resulted in a loss of fifty cents per hundredweight to appellee, as agreed in the agreed statement of facts filed in the court below in this case; the amount of the judgment being such difference, with interest.

It is contended by counsel representing the appellant Railroad Company in this appeal that this court, in *Illinois Central R. R. Co.* v. *W. J. Davis & Co.,* 72 So. 874, announced a rule which, if followed, demands a reversal and dismissal of this case. The facts in the Davis Case are, we think, altogether different from the facts of the instant case. In the Davis Case there was a claim for damages on account of an unreasonable delay in the transportation of the cattle from the initial point to the point of destination, which caused a shrinkage in the weight of the cattle. This damaged the cattle physically, and this physical deterioration, and this loss of weight was a damage to the thing shipped, which damage caused the plaintiff to lose money. The Davis Case was correctly decided, but we think the facts of this make an entirely different case. Here there was no delay. Here there was no damage to the cattle. Here there was no loss of the thing shipped. The damage in the present case was the result of defendant's negligence in failing to put the proper tag on the car.

The contract in this case was prepared by the common carrier, and we are of opinion that there is

nothing in it which required the shipper to give any written notice to the carrier.

It is quite reasonable to say that the shipper did not know that the carrier had neglected to do its duty until the ten days mentioned in the bill of lading had expired, But, be that as it may, we construe the bill of lading to mean that the "loss" referred to is a loss of the thing shipped, and the word "damage" means some physical impairment of the article shipped, which physical impairment damaged the shipper's pocketbook.

*Affirmed.*