A. Goldsmith, trading as A. Goldsmith & Company, Appellee, v. Florida East Coast Railway Company, Appellant.

### Gen. No. 24,730.

1. CARRIERS, § 96*—*what law governs rights arising through delay.* The rights of the shipper and the carrier of an interstate shipment arising through a delay in transportation are governed by the federal law.

2. CARRIERS, § 98*—*when evidence insufficient to show delay.* In an action against a carrier to recover damages alleged to have been caused by a delay in transportation, evidence examined and *held* insufficient to establish a delay in transportation.

3. CARRIERS, § 166*—*construction of clause limiting time for presentation of claims.* The provision in a bill of lading that claims for "loss or damage" must be made in 10 days after the arrival of the shipment at the ultimate destination is not limited to claims based on injury to the shipment, but covers also loss suffered by reason of delay in shipment.

4. CARRIERS, § 166*—*effect of application of limitation on time for presenting claims to claims based on delay.* The application of the requirement in a bill of lading that 10 days' notice be given of "claims for loss or damage" to claims for damage caused by delay does not work a hardship on the shipper, but puts in permanent form the evidence of an intention to claim damages and serves to call the carrier's attention thereto, giving it an opportunity to investigate which might be lost if it were not notified until just before the statute of limitations had run.

Appeal from the County Court of Cook county; the Hon. J. J. COOKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed. Opinion filed March 18, 1920.

CHARLES R. YOUNG and JOHN A. SHEEAN, for appellant.

CHARLES A. BUTLER, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Plaintiff brought suit against defendant to recover damages claimed to have been sustained by reason of the delay in transporting a carload of potatoes from Hastings, Florida, to Chicago. There was a finding and judgment in his favor for $357, to reverse which defendant prosecutes this appeal.

The record discloses that plaintiff bought a carload of potatoes at Hastings, Florida; that a through bill of lading was issued by defendant company; that the car of potatoes left Hastings some time after 5 o'clock of the evening of April 15, 1914, and arrived in Chicago at 4:30 a. m. April 21, 1914; that it was placed for unloading at 6:50 a. m. of the same date, and the plaintiff, consignee, notified at 9:30 a. m. of the same day. Plaintiff's claim was that if the car had been transported with reasonable dispatch it would have arrived in Chicago April 20, 1914, and by reason of the delay in the arrival of the car plaintiff lost the amount of his claim caused by a decline in the market. As the shipment in question was an interstate one, the rights of the parties are governed by national law. *Adams Exp. Co. v. Croninger*, 226 U. S. 491. It has been held that failure to transport goods from one State to another with reasonable dispatch renders the initial carrier liable for loss sustained by reason of a decline in the market. *New York, P. & N. R. Co. v. Peninsula Produce Exchange of Maryland*, 240 U. S. 34; *Fox v. Chicago & N. W. Ry. Co.*, 199 Ill. App. 453.

Defendant contends that the evidence failed to prove that there was any delay in the arrival of the shipment in Chicago; that plaintiff's claim, if any, is barred by reason of the fact that he failed to give written notice of his claim within 10 days after the arrival of the potatoes, as provided in the bill of lading. We think both of these contentions must be sustained. Plaintiff testified in his own behalf that the usual and customary time required to transport a car of pota-

toes from Hastings to Chicago was 5 days; that he had purchased other cars of potatoes at Hastings and they arrived in Chicago on the morning of the fifth day after leaving Hastings. On cross-examination he admitted that he did not know what time of day any of these cars left Hastings. It was stipulated that the car in question left Hastings after 5 p. m. and he testified: "If it starts at 5:00 p. m. or later on the 15th at Hastings, my idea is that it should be here on the 20th at 5 o'clock in the morning." This is far from saying that if the shipment left Hastings later than 5 o'clock in the evening it would arrive here at 5 o'clock on the morning of the fifth day, which is the interpretation plaintiff's counsel puts upon the testimony we have quoted. We think it clear that plaintiff did not know what time a car would arrive in Chicago which left Hastings after 5 o'clock in the evening. His testimony simply is that it is his idea that it should arrive on the morning of the fifth day. James H. Giroux testified for plaintiff that 5 days was the usual time required for the transportation of a car of potatoes from Hastings to Chicago. On cross-examination he admitted that whether the car would arrive at Chicago on the fifth or sixth morning after shipment "depends entirely on what time the shipment moves out of the point of origin." On redirect examination he further testified that the time the trains should leave Hastings depended upon the number of cars "that were presented to the carrier for transportation." For the defendant, John F. Boylan testified that he was chief tracing clerk for one of the railroad companies and that the usual and customary time for shipment from Jacksonville, Florida, to Chicago was 5 or 6 days and that one day additional should be added for shipments originating at points south of Jacksonville, and that one day should be added to the Jacksonville time for cars coming from Hastings, which was 50 odd miles south of Jacksonville. Her-

bert A. Hellstrom testified for the defendant that he was a traveling freight agent for a railroad company, and that the usual and customary time required for transporting a car of potatoes from Hastings to Chicago was 6 days; that the car should arrive on the evening of the sixth day.  Of course the time of day that the shipment started from the point of origin would be very material.  For instance, if a car left Hastings early in the morning and was transported with reasonable dispatch, it might arrive in Chicago on the morning of the fifth day, while if the same car did not leave Hastings until late in the evening, it might not arrive until the morning of the sixth day. Upon a careful consideration of all the evidence, we think it insufficient to warrant the finding that there was a delay in the transportation of the shipment.

The bill of lading provides "that claims for loss or damage must be made in writing to this company within ten days after the arrival of the goods at their place of ultimate destination, in case of fruit, vegetables and other perishable articles."  The plaintiff contends that while this provision may be valid, yet it is not applicable to the facts in the instant case, for the reason that there was no damage to the potatoes themselves, but that the only claim is that plaintiff suffered damage by reason of delay in the arrival of the car due solely to a decline in the market.  It is contended that the reason for the rule requiring that notice be given as provided in the bill of lading is that the delivering carrier may make an examination of the fruit, vegetables, or the goods claimed to have been damaged, and in such case unless the claim is filed within the stipulated time, the defendant has no opportunity of making a defense.  It is pointed out that in a case such as the one at bar, the market price of potatoes can be ascertained at any time whether notice of the claim is given within the time provided in the bill of lading, and therefore, the provision re-

quiring notice is not applicable here. In support of this contention counsel cites *Newman v. Union Pac. R. Co.*, 210 Ill. App. 13; *Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U. S. 190; *St. Louis, I. M. & S. R. Co. v. Starbird*, 243 U. S. 592; *Jett v. Southern R. Co.* (Tenn.), 169 S. W. 767; *Chicago, R. I. & P. R. Co. v. Cunningham Commission Co.*, 127 Ark. 246, 192 S. W. 211; *Illinois Cent. R. Co. v. Smith*, 119 Miss. 308, 80 So. 776.

In the *Newman* case this court held that the provision of the bill of lading requiring notice must be complied with. That case involved a shipment of sheep, and we said that the requirement of notice was to afford the railroad company an opportunity to make an investigation and that "the requirement in some instances may seem harsh, but it is the voluntary obligation of the shipper for a consideration, and has an entirely practical and useful purpose," citing *Georgia, F. & A. R. Co. v. Blish Milling Co.*, 241 U. S. 190. In the *Blish* case it was held that the requirement in the bill of lading that notice be given within a specified time must be complied with and could not be waived. The subject-matter of that suit was a carload of flour which had been damaged in transit. The Court of Appeals of Georgia held the provision in the bill of lading requiring notice inapplicable, but the Supreme Court of the United States held this error, and that the notice must be given and could not be waived. The court said (p. 197): "A different view would antagonize the plain policy of the act (Carmack Amendment) and open the door to the very abuses at which the act was aimed." In the *Starbird* case the bill of lading required that claims for damage be made within 36 hours after notification of the arrival of the freight. In that case a shipment of peaches was transported to New York City arriving in bad condition. The Supreme Court of Arkansas in passing on the question said the stipulation in the bill of

lading requiring notice was reasonable, but as there was proof that a representative of the railroad company knew of the damaged condition of the peaches there was no necessity of giving notice. This was held to be erroneous by the Supreme Court of the United States. In the argument it was said that the necessity for giving notice promptly was to afford the railroad company an opportunity to examine the nature of the damage before the fruit was sold or destroyed. The court said (p. 605): "It is not difficult for the consignee to comply with a requirement of this kind, and give notice in writing to the agent of the delivering carrier. Such notice puts in permanent form the evidence of intention to claim damages, and will serve to call the attention of the carrier to the condition of the freight, and enable it to make such investigation as the facts of the case require while there is opportunity so to do." In the *Jett* case there was a delay in the transportation of poultry during which some of the poultry died, and there was also a decline in the market. The court held that the requirement in the bill of lading that notice of claim be given was not applicable to the damage suffered by reason of the decline in the market, but that it was essential to warrant a claim for damages for the poultry that died while the shipment was in transit. The court said (p. 768): "As to the claim for damages on account of the depreciation in value by reason of the break in the market, the provision in the bill of lading respecting notice is not applicable. The damages contemplated by this clause of the bill of lading are those resulting to the live stock through injury or loss in transportation. There would be no reason for applying this provision to damages occasioned by a fall in the market. Market fluctuations of well-known commodities are matters of record, and the carrier may make investigations and protect itself at one time as well as another against claims so arising." To the

same effect is the *Smith* case where the court held that the loss mentioned in the bill of lading referred to "is the loss of the thing shipped, and the word 'damage' means some physical impairment of the article shipped, which physical impairment damaged the shipper's pocketbook." The holding in the two cases last mentioned is contrary in principle to the holding of the United States Supreme Court in the *Peninsula Produce Exchange* case. In that case, Mr. Justice Hughes, speaking for the court, held that it had been decided in the *Croninger* case, that the Carmack Amendment provided for the issuance of a bill of lading and the liability which a railroad company assumed thereunder. That act requires a common carrier receiving property for interstate shipment to issue a bill of lading, and further the carrier "shall be liable * * * for any loss, damage, or injury to such property caused by it or by any common carrier," etc. It was there contended that loss or damage within the meaning of the Carmack Amendment meant loss or damage to the goods that were transported, and did not reach "the case of the failure to transport with reasonable dispatch." It is there further said (p. 38): "The words 'any loss, damage, or injury to the property,' caused by the initial carrier or by any connecting carrier, are comprehensive enough to embrace all damage resulting from any failure to discharge a carrier's duty * * *. The duty to transport with reasonable dispatch is none the less an integral part of the normal undertaking of the carrier." By a parity of reasoning we think the provision in the bill of lading in the instant case requiring "claims for loss or damage" should be held to cover damage suffered by reason of delay in shipment. Since the bill of lading required notice to be given within 10 days, and since it is conceded that this was not done, the claim is barred. In this connection we might say that there would be no hardship in requiring notice

of a claim for damages to be filed within 10 days.  Such notice, as was said in the *Starbird* case, would put in permanent form the evidence of an intention to claim damages and would serve to call the attention of the railroad company to that fact.  They would then be afforded an opportunity to investigate the evidence as to whether there was a delay in the shipment of the car.  But if no notice were required and the suit were not brought until just before the statute of limitations had run, it might be difficult, if not impossible, to secure the evidence on this point.  The records might be lost or mislaid, employees might be dead or no longer working for the company or otherwise unavailable, and a great many other matters that might readily be suggested could easily prevent the production of the necessary evidence.  We think the provision of the bill of lading was reasonable, that it was applicable to the case at bar, and the court should have so held, as requested.

The judgment of the county court of Cook county is reversed.

*Reversed.*

MR. PRESIDING JUSTICE THOMSON and MR. JUSTICE TAYLOR concur.