John Sexton and Company, Appellee, v. Grand Trunk
Western Railway Company, Appellant.

Gen. No. 34,803.

Heard in the first division of this court for the first district at the December term, 1930. Opinion filed March 2, 1931.

McCORDIC, DENT & FREEMAN, for appellant; SIDNEY K. JACKSON and ROGER D. DOTEN, of counsel

J. V. DeLANEY, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff had a judgment for $11,256.67 against the defendant. The basis of plaintiff's claim is for damages claimed to have resulted through the failure of the defendant to transport seven cars of sugar from Port Huron, Michigan, to Chicago within a reasonable time, the damages being caused by a decline in the market price of sugar. The position of the defendant was and is that it was guilty of no negligence in transporting the sugar but that the delay was caused solely by what is designated as an ''outlaw'' strike of the switchmen in Chicago, which made it impossible to deliver the cars to plaintiff after they arrived in Chicago.

The record discloses that plaintiff is engaged in the wholesale grocery business in Chicago, and in May, 1920, purchased the seven carloads of sugar in question from Czarnikow-Rionda Company, the latter company having theretofore purchased the sugar from the Atlantic Sugar Refineries, Ltd., of St. John, N. B., Canada. In accordance with instructions, the Atlantic Sugar Refineries, Ltd., in the early part of June, 1920, delivered to the Canadian Government Railways the seven cars of sugar to be transported from St. John to Chicago. The Canadian Government Railways issued its through bills of lading, one for each car, to the Sugar Refineries, Ltd., in which it was named as consignor, and Czarnikow-Rionda Co. as consignee, with instructions to notify plaintiff, John Sexton and Company, of Chicago.

There is no evidence, nor is there any contention, that there was any delay in transporting the sugar from St. John to Chicago. And from the evidence it is clear that neither the Canadian Government Railways, over which the sugar was transported from St. John to Port Huron, Michigan, nor the defendant, Grand Trunk Western Railway Company, which brought the sugar from Port Huron to Chicago, was in any way to blame for the switchmen's strike in the Chicago district. The evidence also shows that the defendant railway company used its best efforts to deliver the sugar to plaintiff but that it was unable to do so on account of the strike.

Plaintiff's contention is that it was the duty of the defendant railway company, when the cars were delivered to it at Port Huron, Michigan, to notify *plaintiff* of the strike of the switchmen in the Chicago district and that it failed to perform this duty. Counsel for plaintiff in his brief says: ''There was no attempt on the part of the defendant to prove that any notice was given to us, the plaintiff, as to a strike condition existing on its line. In fact, we feel it was agreed at the time of the trial, and we believe also in the stipulation that no notice was given of the existence of a strike, or any likelihood of delay caused by same.'' In reply to this, counsel for the defendant say that the record does not disclose any such agreement and that there was no evidence tending to show that any such notice was or was not given to the plaintiff— that there is no evidence on this question. And each side contends that the burden was on the other to make such proof.

In the view we take of the case, we think it is unnecessary to pass on the question as to which side had the burden of proof. Suffice it to say that plaintiff alleged in its declaration that it was the duty of the defendant to notify it at Port Huron, Michigan, when

the cars were delivered to it there, of the fact that the strike of the switchmen might cause a delay.

The evidence further shows that shortly after the cars were received by plaintiff it filed its claims for damage to the sugar, which claims were paid; that the claim which is the basis of the judgment was not made until September 15, 1921, about 16 months after the delivery of the sugar to plaintiff. The bills of lading contain on the reverse side the following conditions: (1) that the carrier should not be liable for loss or damage or delay caused by strikes; and (2) that "Notice of loss, damage or delay must be made in writing to the Carrier at the point of delivery, or to the Carrier at the point of origin, within four months. . . . Unless notice is so given the Carrier shall not be liable."

The consolidated freight classification filed by the defendant with the Interstate Commerce Commission of the United States and with the Board of Railway Commission of Canada provided: "Except where the loss, damage, or injury complained of is due to delay or damages while being loaded or unloaded, or damaged in transit by carelessness or negligence, as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property."

Defendant contends that under the conditions above quoted from the bill of lading, there is no liability because the defendant did not file its claims within four months from the time the sugar was delivered to the plaintiff, but on the contrary did not file such claims until about 16 months after such delivery. We think this contention must be sustained. Section 20 of the Act to Regulate Commerce, in force in 1920 when the sugar in question was transported, required a common carrier receiving property for transportation in interstate commerce to issue a receipt or bill of

lading therefor and makes it liable to the holder for any loss, damage or injury to such property and contains the following proviso: *"Provided further*, That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years; *Provided, however*, That if the loss, damage or injury complained of was due to delay or damage while being loaded or unloaded, or damage in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery." *Davis v. John L. Roper Lumber Co.*, 269 U. S. 158. In that case the court held, under the second proviso above quoted, "that 'carelessness or negligence' is an element in each case of loss, damage, or injury there named." And that since there was no evidence showing carelessness or negligence on behalf of the transportation company, notice of loss or damage must be given within the time mentioned in the bill of lading; and unless this were done no recovery could be had. See also *Chesapeake & O. Ry. Co. v. A. F. Thompson Mfg. Co.*, 270 U. S. 416; *Barret v. Van Pelt*, 268 U. S. 85. In the instant case there is no evidence of any carelessness or negligence on behalf of either of the two railroad companies in the transportation of the sugar. Nor do we think there is any merit in plaintiff's contention that it was the duty of the defendant Railway Company to notify plaintiff of the fact that there was a switchmen's strike in the Chicago district when the cars were turned over to it at Port Huron, Michigan. And this is so even if we assume that no notice was given by the defendant Railway Company to plaintiff of the fact that there was a strike of the switchmen, for the reason that when the defendant received the cars at Port Huron, Michigan, they were then in

transit from St. John to Chicago. In these circumstances, the defendant company ought not to be placed in the same position as though it were the initial carrier that received the goods from the consignor. There was certainly no obligation on the defendant Railway Company in any view of the case, to notify plaintiff. Plaintiff was neither the consignor nor the consignee of the goods. If there was such obligation the notice should be given to the consignor. *Eastern Ry. Co. v. Littlefield*, 237 U. S. 140. So that in any view of the case there could be no obligation on the part of either of the two Railway Companies to notify plaintiff, as it alleged in its declaration. No notice having been given within four months, no recovery can be had. Moreover, there is no allegation in the pleadings, nor is there any evidence that plaintiff, who was conducting a wholesale grocery business in Chicago, where the strike was causing difficulty, did not know that the switchmen were on strike. Obviously, if the plaintiff knew of the switching difficulties in the Chicago district at the time in question, it would not have been benefited had the defendant Railway Company notified it of the strike.

A condition on the reverse side of the bill of lading, similar to the condition involved here in regard to notice of loss being given within four months, has been held valid both in Canada (*Premier Lumber Co., Ltd. v. Grand Trunk Pac. R. R. Co.* [Can.], 1 Western Weekly Reports [1923] 473; *Grand Trunk Ry. Co. of Canada v. McMillian*, 16 Supreme Court of Canada Reports, 543) and in this country (*Georgia F. & A. Ry. Co. v. Blish Milling Co.*, 241 U. S. 190; *Goldsmith v. Florida East Coast Railway Co.*, 217 Ill. App. 162.)

There is another reason why plaintiff cannot recover, and that is that all of the evidence shows that the defendant Railway Company was in no way negligent in transporting or delivering the sugar, the delay having been caused solely by the strike.

The judgment of the circuit court of Cook county is reversed with a finding of fact.

*Judgment reversed with a finding of fact.*

MATCHETT, P. J., and McSURELY, J., concur.

Finding of fact: We find as a fact that plaintiff, having failed to give the defendant notice of its claimed loss within four months after the delivery of the sugar to plaintiff, no recovery can be had.

We also find as an ultimate fact that the defendant Railway Company was not negligent in transporting or delivering the sugar.